## EX PARTE J. C. KEARBY AND W. E. HAWKINS.

### *No. 105.   Decided March 5th, 1896.*

1. **Court of Criminal Appeals—Authority to Issue Writs of Habeas Corpus—Construction of Statutes.**

See, opinion, which, after quoting Code Crim. Proc., Arts. 154, 155, 165 and 173, relating to the issuance of writs of habeas corpus. Holds:   That these statutes would appear to clothe the Court of Criminal Appeals with ample authority to at least issue the writ of habeas corpus in almost any conceivable case of alleged illegal confinement and restraint.

2. **Same—Contempt of Court—Judgment and Commitment for—Due Course of Law.**

Where a party has been adjudged in contempt of court, he should not be imprisoned until a judgment finding the factum of the contempt has been entered and a writ of commitment been issued. No court, under our system of government, should be authorized to imprison a citizen for a contempt unless, at the very time he is so committed, the proper order is made and entered and the writ of commitment issued for the purpose of his detention. This is, due course of law.

3. **Habeas Corpus—Effect of the Writ—Authority and Jurisdiction Over Relator.**

The effect of the granting of a writ of habeas corpus, is to place the relator entirely within the direction and authority of the judge or court granting the writ as long as it is pending; and. where the relator has obtained the writ to relieve himself of res-

traint, under a judgment which was only verbal and therefore void, it is beyond the power of the judge or court, by entry of a judgment, to supercede the jurisdiction of the court granting the writ.

**4.   Attorney-at-Law—Contempt—Limitations of Judgments For.**

An attorney-at-law may be punished for misbehavior or contempt, by fine or imprisonment—the fine not exceeding $100, and the imprisonment not exceeding three days. (Rev. Stat., Art. 1101), and this statute creates a limitation upon the court as to the extent of the punishment. And an order made without any limitation, as to the extent of the punishment, but making the same subject only to the will and pleasure of the court making it, is such an order as no court has authority to make.

From Dallas County.

This proceeding embraced two original applications to Hon. John N. Henderson, a Judge of the Court of Criminal Appeals, for relief from custody under a verbal order of the Criminal Court of Dallas County, imprisoning relators for a contempt.   The writ was granted and issued February 29th, 1896, and made returnable before the Court of Criminal Appeals on March 2nd, 1896.   The return upon the writs, which was made by the sheriff, Ben E. Cabell, at 3:30 o'clock, p. m., the 29th day of February, 1896, is as follows:

"To the Hon. J. N. Henderson, Associate Judge, and the Court of    Criminal Appeals of the State of Texas:

"In response to your Honor's writ of habeas corpus, I respectfully state that it is true that when I received this writ, I had in my custody in the county jail of Dallas County, Texas, the within named J. C. Kearby and W. E. Hawkins.

"I took into my custody and detained said J. C. Kearby and W. E. Hawkins by virtue of the authority of an oral order made to me at about 11:30 o'clock a. m., on the 29th day of February, 1896, by the Hon. Chas. F. Clint, sitting as Judge of the Criminal District Court of Dallas County, Texas, which said oral order was in substance as follows, viz: 'Mr. Sheriff, take these men to jail.'   Referring to the said J. C. Kearby and W. E. Hawkins.

"I have not annexed to this return any writ whatever by virtue of which I held the said J. C. Kearby and W. E. Hawkins in my custody, for the reason that I have not had, and have not now, any such writ.

"About 3:30 o'clock, p. m., on the 29th day of February, 1896, in obedience to this writ, I released the said J. C. Kearby and W. E. Hawkins, taking their bonds as directed by this writ, which bonds are attached hereto, and returned into this court.

"Witness my hand at 3:30 o'clock, p. m., on this 29th day of February, A. D. 1896.                              "Ben E. Cabell,
                              "Sheriff, Dallas County, Texas."

"The statements made in the foregoing return upon the writ of habeas corpus attached hereto, are true in substance and in fact.
                              "Ben E. Cabell,
                              "Sheriff, Dallas County, Texas."

"Sworn to and subscribed before me, this 29th day of February, A. D. 1896."

In support of his application for habeas corpus Relator W. E. Hawkins, filed the following statement, which is sworn to and which sets out the facts of the case, to-wit:

No. 105, Ex Parte J. C. Kearby and W. E. Hawkins.
In the Court of Criminal Appeals of Texas.

To the Honorable Court:  Now comes your relator, W. E. Hawkins, and in support of the application heretofore filed by him for your most gracious writ of habeas corpus herein, shows to the court:

1.  On the 29th day of February, A. D. 1896, in the course of the trial of a case in the Criminal District Court of Dallas County, in which case J. C. Kearby was of counsel for defendant, and your relator, W. E. Hawkins, who was Assistant County Attorney of Dallas County, was of counsel for the State, there arose an occasion for the introduction of certain documentary evidence for the State, including two exhibits, one of which is herein called Exhibit A, and the other Exhibit B; Exhibit A consisted of a number of sheets, and purported to be a final statement of cotton received for W. White & Company during the entire season at the gin, for the burning of which the defendant, C. A. Dawson, was, at the time of the introduction of such evidence, on trial.  Said statement had been rendered by the ginners, the day after the gin had burned.  Exhibit B was a statement rendered by said ginners on the day before the fire, and purported to show the amount of cotton in the gin at that time.  The two exhibits had, in preparation of said case for trial, been pinned together by this relator for convenience in comparing them.  This relator introduced in evidence Exhibit A, explaining what it was, and said he would next introduce Exhibit B, and explain what it was; looking for it upon the long table among his other papers, and not finding it, this relator turned to the stenographer's table, upon which he had placed Exhibit A, and in full view of the stenographer, jury and court, and most of counsel for both sides, openly unpinned from Exhibit A the single sheet constituting Exhibit B, and offered it in evidence.  Whereupon said J. C. Kearby, misapprehending the facts, and acting under an erroneous impression, said that the single sheet was not all of the report which this relator claimed to be then offering in evidence, but that the other sheets upon the stenographer's table were a part of it; and demanded that the entire report, or none, should go in evidence.  This relator remarked, "That is all of it, Major."  Mr. Kearby declared that it was not all.  This relator said, "You simply do not understand the facts, Major.  This is the entire report rendered the day before the fire; and it was attached by me to the other report merely for reference."  And extending it with one hand towards Major Kearby, who was then on his feet, this relator held up his other hand to the court and said quietly and respectfully, "Your Honor, I will be qualified that this is the entire report.'  Mr. Kearby again said it was not all, just as Hon. Chas. F. Clint, who was presiding over said court, asked this relator to show Exhibit A (the final report) to Mr. Kearby.  This relator thereupon said

to the court: "Certainly I have no objection to his seeing all the papers, or to all of them being in evidence; but I do repel as utterly false the insinuation that I would do any such thing." Mr. Kearby turned toward this relator, addressing him, and assumed a menacing attitude, and this relator stood in a defensive posture, but said nothing. Neither party either struck or struck at the other; nor did either advance toward the other. Mr. J. C. Muse, also of counsel for defendant, Dawson, stepped between Major Kearby and this relator. Judge Clint, who had administered no reproof of any nature or kind to anyone, thereupon orally directed the sheriff to take Mr. Kearby and this relator to jail, which he did upon said oral order only; which was in substance, "Take these men to jail." Referring to Mr. Kearby and this relator.

2. The incident mentioned above occurred about 11:30 o'clock a. m. Up to the adjournment of said court, at about 12 o'clock m. of said day, for the noon recess, Judge Clint had not directed the clerk of his court to enter any order or judgment relative to said incident, or to either Major Kearby or this relator, and none had been entered; and the clerk of said court had not, up to the said adjournment, issued any writ relative to either said J. C. Kearby or this relator, and has not since issued any such writ. However, Judge Clint did, during said recess on said day, when he was not on the bench, and his court was not in session, and neither of the relators herein was present, direct the clerk of his court to enter up an order in the premises; and said clerk did, on Monday, March 2nd, enter up, an order, a copy of which, marked "Order," is attached hereto.

3. Soon after noon of said February 29th, relator's attorney, S. B. Hawkins, appeared in open court, before Judge Clint, and requested on behalf of W. E. Hawkins that he be permitted to appear in person before said court for the purpose of presenting a motion, and purging himself of contempt. This the court peremptorily refused to permit, saying, in substance, "If he (meaning this relator) wishes to make a statement, let him do it in writing from the jail." Relator's said attorney, S. B. Hawkins, then in open court presented to Judge Clint the written statement signed by this relator, which is attached to this relator's application for a writ of habeas corpus herein, which written statement was as follows, viz:

"Hon. CHAS. F. CLINT, Judge Criminal District Court, D. C. T.:

"I respectfully show to the court that the unfortunate occurrence of the morning in your Honor's court, which I much regret, was not of my option; that one of opposing counsel in open court, with no personal familiarity with the facts involved, insulted me repeatedly, without reproof by the court for the first offense; and in spite of my courteous assurance to him that he was simply mistaken on the facts, again repeated the insult, and finally cursed me, without my having used to him any unparliamentary language.

"I hereby expressly disclaim any intention of reflecting on the dig-

nity of the court, and ask the court to overlook the incident as to both parties.                Respectfully,

[Signed]                                "W. E. HAWKINS."

The court read and refused to accept said written statement as sufficient, and directed this relator's attorney to tell both Major Kearby and this relator "That nothing but an unconditional, unqualified apology to this court and jury in writing will be sufficient." Thereupon this relator sued out said writ of habeas corpus, upon which he was released, having given the required bond, and having been in jail about four hours.

4. After his release, this relator, in company with Major Kearby, who had also been released upon a similar writ, and between whom and this relator all misunderstanding had been amicably and honorably adjusted, returned to said court, where said trial was in progress, and took his seat with other counsel. Judge Clint, who had already been informed that the writ of habeas corpus had been granted this relator and his corelator, stopped the case on trial, and stated that neither Major Kearby nor relator would be permitted to proceed with the case until they had purged themselves of contempt. Relator courteously and respectfully stated to the court, in substance, "With all respect to the court, I desire to say that while the official position which I occupy here is a subordinate one, it is nevertheless one recognized by the laws of Texas, and I am under the same oath as is the judge upon the bench, and feel that I have a duty to perform in the further prosecution of the case now on trial before this court." The court said, in substance, "Not until you purge yourself of contempt." Whereupon this relator respectfully inquired, "Will the court kindly intimate what the court deems necessary for me to do further in order to purge myself of contempt?" The court answered in substance, "You are presumed to know what to do." This relator asked, "Do I understand the court to refer to the message sent to me to the jail by the court?" The court said in substance, "I suppose you understand." This relator thereupon respectfully retired.

The allegations contained in the first paragraph of the above and foregoing statement are true in substance and in fact.

                .....................

Sworn to and subscribed before me this 5th day of March, 1896.

                .....................

The allegations contained in the second paragraph of the above statement are true in substance and in fact.

                .....................

Sworn to and subscribed before me this 5th day of March, 1896.

                .....................

The allegations contained in the third paragraph of the foregoing statement are true in substance and in fact.

S. B. HAWKINS.

Sworn to and subscribed before me this 5th day of March, 1896.

W. A. HUDSON, Clerk.

The allegations contained in the first, third and fourth paragraphs of the above and foregoing statements are true in substance and in fact.

W. E. HAWKINS.

Sworn to and subscribed before me this 5th day of March, 1896.

[Seal]                                W. E. PRESCOTT,

Notary Public for Dallas County, Texas."

"ORDER.

"It is ordered by the court that W. E. Hawkins and J. C. Kearby be and they are hereby adjudged to be in contempt of this court, in that the said Hawkins and Kearby did engage in a fracas in open court and during the progress of a case then on trial in said court, to-wit: the case, the State of Texas v.. C. A. Dawson, No. 1472, and the said Kearby did then and there use profane and improper language; it is therefore ordered by the court that they, the said W. E. Hawkins and J. C. Kearby, be punished for said contempt by imprisonment in the county jail until they have purged themselves of said contempt.

"It is therefore ordered, adjudged and decreed by the court that the said W. E. Hawkins and J. C. Kearby be, and they are hereby remanded to the custody of the Sheriff of Dallas County, Texas, until they have purged themselves of said contempt."

The Hon. *Mann Trice*, Assistant Attorney-General, filed the following motion to dismiss the writ of habeas corpus in Ex Parte Kearby, above:

"Ex Parte J. C. Kearby.

"In the Court of Criminal Appeals of the State of Texas.   Dallas term, 1896.

"Now comes the State by attorney, and moves the court to dismiss the application for writ of habeas corpus herein filed, and remand the relator to the custody of the sheriff of Dallas County, to abide the judgment and orders of the Honorable Judge of the Criminal District Court of Dallas County:

1.   "Because said application fails to show a want of jurisdiction on the part of the said judge to make and enter the order of commitment for contempt herein, and wholly fails to show that said judgment is absolutely void.

2.   "Said application shows upon its face all necessary jurisdictional facts, in this, that said relator is an attorney-at-law, and that he was ordered committed to jail for contempt of said court.   In such case, the writ of habeas corpus cannot be invoked, unless it affirmatively appears

that the court in making the order was wholly without jurisdiction to make the same.

3.   "The learned judge who granted this writ evidently acted upon the assumption that the judgment is void, because there was no limit as to the time the relator was committed, basing his opinion upon Art. 1101, Revised Statutes of 1895, which in substance provides, 'The District Court shall have power to punish for contempt by fine not exceeding $100, and by imprisonment not exceeding three days, any person guilty of contempt.'   This section of the statute only refers to and limits the power of the District Court to punish for contempt persons other than attorneys-at-law.   The provision of the statute authorizing the District Court to punish an attorney-at-law is to be found in Art. 262, Revised Statutes of 1895, which in substance provides, 'Each attorney-at-law shall be subject to fine or imprisonment by any court in which he may practice, for misbehavior or contempt of such court.'   This latter clause of the statute is special in its nature, applying peculiarly and exclusively to attorneys-at-law.   There is no limit to the amount of the fine or to the imprisonment to be imposed, but it is left within the discretion of the court; with this difference, however, that both fine and imprisonment cannot be imposed, while under the first clause of the statute, both fine and imprisonment can be imposed.   If, however, the contention of the relator that Article 1101 controls, then said application fails to show that the judgment rendered was absolutely void, but the most that can be said of it, is that it is merely voidable.   The prevailing rule in such case is, that an excessive sentence is merely voidable, and that the whole sentence is not illegal and void because of the excess; and on habeas corpus, the Appellate Court will not treat the judgment as void, but only void as to the excess.   Church on Habeas Corpus, p. 529; In re McDonald, 76 Wis., 366; In re Graham, 138 U. S., 461; Ex parte Van Haber, 25 Ohio State, 426; Ex parte Ryan, 17 Nevada, 139;  People v. Baker, 89 N. Y., 467; Ex parte Cox, 29 Tex. Crim. App., 84.

4.   "Because the judgment of committal herein rendered, shows that the relator was adjudged guilty of contempt of court, for that he was engaged in a personal difficulty in said court, and then and there, in the presence and hearing of the court, used profane and improper language. Said order of committal is hereto attached, marked 'Exhibit A,' and asked to be considered as a part of this motion.   (See order ante.—Reporter.)

"Wherefore, because this court is wholly without jurisdiction, to hear and determine this matter, it is respectfully submitted that this application be dismissed, and the relator remanded to the custody of the sheriff."

*Stillwell H. Russell, J. C. Muse,* and *S. B. Hawkins,* for relators.

[No briefs have come to the hands of the Reporter.]

HENDERSON, JUDGE.—Applicants in this case applied for writs of habeas corpus, and one of the judges of this court granted the same, making the writs returnable before the full court, which is now in ses-

sion at this place.    The applicants allege that the matter about which
the judge of the Criminal District Court assumed to imprison them for
contempt occurred during the trial of a cause in said District Court.    It
is averred in the application that the parties did no unlawful act in said
court, and were guilty of no contempt of said court in any respect what-
soever, and that the said District Judge, unlawfully and without cause
therefor, remanded them to jail, until they should purge themselves of
said contempt before said court and jury; that no order of the court was
entered, and no writ of commitment issued from said court.    Applicants
claim that the order of imprisonment is for an indefinite time, and is
therefore void; and that it is also void, because no judgment of the court
was entered against them, and no writ of commitment was issued as
against them.    The applicant, Hawkins, further shows that he made an
effort to purge himself of contempt of said court by either a written or
verbal explanation or apology, which was refused by the judge.    The
Attorney General has moved to dismiss the writ and remand the relators
to jail, because this court has no jurisdiction to inquire into the matter
of their detention.    This question involves the power of this court to
inquire, by an original proceeding, into the legality of a detention by a
court of subordinate jurisdiction for an alleged contempt.    It is admitted
that this presents a question of some delicacy, for in the power of courts
to preserve order and decorum in their presence is involved, to a great
extent, the authority and dignity of the court itself; and therefore any
court that should undertake to interfere with such jurisdiction ought to
act with due care and caution to ascertain whether or not it has jurisdic-
tion to entertain the writ.    Although this is not a new question in this
State (see, Ex Parte Degener, 30 Tex. Crim. App., 566), yet we have
undertaken to carefully investigate our right to interfere in the present
instance.    Art. 155, Code Crim. Proc., provides "that the Court of Ap-
peals, or either of the judges thereof, the District Courts or any of the
judges thereof; the County Court or any of the judges thereof, have
power to issue the writ of habeas corpus, and it is their duty upon proper
application to grant the writ, under the rules herein prescribed."    Article
154 says: "That every provision relating to the writ of habeas corpus shall
be most favorably construed, in order to give effect to the remedy and pro-
tect the rights of the person seeking relief under it."    Article 173 reads as
follows: "The writ of habeas corpus is intended to be applicable to all
such cases of confinement and restraint where there is no lawful right in
the person exercising the power, or where, though the power in fact ex-
ists, it is exercised in a manner or degree not sanctioned by law."    Article
165 also provides:    "The writ of habeas corpus shall be granted without
delay by the judge or court receiving the petition, unless it be manifest
by the *statements of the petition itself,* or some document annexed to it,
that the party is entitled to no relief whatever."    These statutes would
appear to clothe this court with ample authority to, at least, issue the
writ in almost any conceivable case.    The case here charged is a con-
tempt of court.    At the granting of the writ, no judgment was entered,

but the officer was directed to confine the parties in jail for an indefinite period of time.  ·Furthermore, no writ of commitment was issued.  Both of these steps should have been taken.  As we understand it, the weight of authority requires, on the part of the court, that it should find the factum of contempt.  See, 4 Enc. Pl. & Prac., p. 798; Ex parte O'Brien (Mo.), 30 S. W. Rep., 158; Ex parte Robertson, 27 Tex. Crim. App., 634.  And, following this in regularity, there should be an order of commitment.  See Ex parte Robertson, 27 Tex. Crim. App., 634; citing, Ex parte Burford, 1 Cranch, C. C., 456, Fed. Cas. No. 2149. Both by reason and authority, we hold that no court, under our system of government, should be authorized to imprison a citizen for a contempt, unless, at the very time he is so committed, the proper order is made and entered, and the writ of commitment issued for the purpose of his detention.  This we understand, in this respect, to be due course of law.  Nor, in our opinion, is it competent for any court, unless such steps are taken, for it, after a party detained under its verbal orders has sued out a writ of habeas corpus, to then make its judgment, and have the same entered, and in this manner supersede .the jurisdiction of the court granting the writ.  See, Art. 182, Rev. Code Crim. Proc., which provides:  "When the return of the writ has been made, and the applicant brought before the court, he is no longer detained on the original warrant of process, but under the authority of the habeas corpus; and the safe keeping of the prisoner, pending the examination or hearing, is entirely under the direction and authority of the judge or court issuing the writ, or to which the return is made."  But concede, in this case, that the District Judge had authority by mere verbal order to cause the imprisonment of the applicants, still it was his duty, in the sentence imposed, not to exceed the bounds authorized by law for the punishment of parties in contempt.  Art. 262, Rev. Civ. Stat., authorizes courts to punish "attorneys-at-law for misbehavior or contempt, by fine or imprisonment."  It is true there is no limitation in this article, but Article 1101 limits the extent of the power of the District Judge in this respect, and says, "that he shall be authorized to punish persons guilty of contempt by fine not exceeding one hundred dollars, and by imprisonment not exceeding three days."  This clearly applies to all persons, and creates a limitation upon the District Court to punish any one to a greater extent.  The verbal order, as it comes before us on the face of the writs, is without limitation as to time.  The order above referred to, which was entered subsequently (after the verbal order), undertakes to confine them until they purge themselves.  What the judge meant by this expression we are not informed.  The answer of one of the applicants, however, shows that he endeavored to make explanation and apologize to the court either verbally or in writing, which was refused by the court.  What submission, what apology, what abjection, on the part of the applicants, is not indicated in the order entered, after this court acquired jurisdiction; and standing, as it does, in this condition, it adds force to the contention that the order made was without limitation. sub-

ject only to the will and pleasure of the judge making it. By all of the authorities, as we understand them, such an order no court has authority to make. See, 4 Enc. Pl. & Prac., p. 802, note 1. We have only considered the questions arising on the face of the applications which the motion to dismiss calls in question; and we hold that this court, on the face of the petitions, has jurisdiction, and the writ was properly issued. The motion is accordingly overruled.

*Motion Overruled.*