FISHER *v.* PACE, SHERIFF.

No. 45. Argued December 9, 1948.—Decided February 7, 1949.

*R. Dean Moorhead* argued the cause for petitioner. With him on the brief were *Dan Moody, Chas. L. Black, Everett L. Looney* and *Edward Clark.*

*Quentin Keith* submitted on brief for respondent.

MR. JUSTICE REED delivered the opinion of the Court.

While participating as counsel in the trial of a cause the petitioner, Joe J. Fisher, was adjudged guilty of contempt committed in the presence of the court by the District Court of Jasper County, Texas. The petitioner's client was the plaintiff in an action under the state workmen's compensation law. The case was being tried before a jury and the parties had stipulated as to the average weekly wage of the claimant and the rate of compensation per week. The only remaining questions to be determined were as to the extent and duration of the incapacity resulting from an injury to the claimant's foot. Seven special issues, designed to furnish an answer to these problems and limited to them, were submitted to the jury.

Thereafter petitioner began his opening argument to the jury during which the following occurrence took place, as shown by the trial court's order of contempt and commitment:

> "Opening argument to Jury of Plaintiff's Attorney, Joe J. Fisher
>
> "Now, bear in mind, gentlemen, that this is what we call a specific injury. A general injury is an injury to the entire body. This is what is known as a specific injury, and it is confined to the left foot. We have specific injuries where you have injuries

to the eye, to your hand, and to your foot; this is an injury to the foot, to the left foot; and the law states the amount of maximum compensation which a person can receive for such an injury, that is, one hundred and twenty-five weeks. That is the most compensation Anderson Godfrey could receive, would be one hundred and twenty-five weeks, because his injury is confined to his left foot. That is all we are asking. Now, that means one hundred and twenty-five weeks times the average weekly compensation rate.

"By Mr. Cox: Your Honor please—

"By the Court: Wait a minute.

"By Mr. Cox: The jury is not concerned with the computation; it has only one series of issues. That is not before the jury.

"By the Court: That has all been agreed upon.

"By Mr. Fisher: I think it is material, Your Honor, to tell the jury what the average weekly compensation is of this claimant so they can tell where he is.

"By the Court: They are not interested in dollars and cents.

"By Mr. Fisher: They are interested to this extent—

"By the Court: Don't argue with me. Go ahead. I will give you your exception to it.

"By Mr. Fisher: Note our exception.

"By the Court: All right.

"[By Mr. Fisher:] This negro, as I stated, can only recover one hundred and twenty-five weeks compensation, at whatever compensation the rate will figure under the law.

"By Mr. Cox: I am objecting to that discussion, Your Honor, as to what the plaintiff can recover.

"By the Court: Gentlemen! Mr. Fisher, you know the rule, and I have sustained his objection.

"By Mr. Fisher: I am asking—

"By the Court: Don't argue with me. Gentlemen, don't give any consideration to the statement of Mr. Fisher.

"By Mr. Fisher: Note our exception. I think I have a right to explain whether it is a specific injury or general injury.

"By the Court: I will declare a mistrial if you mess with me two minutes and a half, and fine you besides.

"By Mr. Fisher: That is all right. We take exception to the conduct of the Court.

"By the Court: That is all right; I will fine you $25.00.

"By Mr. Fisher: If that will give you any satisfaction.

"By the Court: That is $50.00; that is $25.00 more. Mr. Sheriff come get it. Pay the clerk $50.00.

"By Mr. Fisher: You mean for trying to represent my client?

"By the Court: No, sir; for contempt of Court. Don't argue with me.

"By Mr. Fisher: I am making no effort to commit contempt, but merely trying to represent the plaintiff and stating in the argument—

"By the Court: Don't tell me. Mr. Sheriff, take him out of the courtroom. Go on out of the courtroom. I fine you three days in jail.

"By Mr. Fisher: If that will give you any satisfaction; you know you have all the advantage by you being on the bench.

"By the Court: That will be a hundred dollar fine and three days in jail. Take him out.

"By Mr. Fisher: I demand a right to state my position before the audience.

"By the Court: Don't let him stand there. Take him out."

The sheriff held the petitioner in custody upon the verbal order of the court until an amended order in conformity with Texas law,[1] setting forth in full the above proceedings together with a formal commitment, was filed later the same day. Upon his application for a writ of habeas corpus from the Supreme Court of Texas to secure his release from the commitment, the judgment for contempt was upheld and the petitioner was denied any relief by that court and was remanded to the custody of the sheriff to undergo the punishment adjudged by the trial court. *Ex parte Fisher,* 146 Tex. 328, 206 S. W. 2d 1000. As the application alleged a denial of due process of law under the Fourteenth Amendment to the Constitution of the United States, we granted certiorari to consider its application to this conviction for contempt. 334 U. S. 827. The claimed denial of due process consists of an alleged refusal to review the facts to ascertain whether a contempt was committed and in the alternative, if the facts were reviewed, due process was denied because no facts constituting contempt appear.

Historically and rationally the inherent power of courts to punish contempts in the face of the court without further proof of facts and without aid of jury is not open to question.[2] This attribute of courts is essential to preserve their authority and to prevent the administration of justice from falling into disrepute. Such

---

[1] *Ex parte Kearby,* 35 Tex. Crim. Rep. 531, 34 S. W. 635; *Ex parte Ray,* 101 Tex. Crim. Rep. 432, 276 S. W. 709.

[2] 4 Bl. Comm. 286; *Ex parte Terry,* 128 U. S. 289, 302–304, 313–14; *Ex parte Savin,* 131 U. S. 267, 277; *Eilenbecker* v. *District Court,* 134 U. S. 31, 36–37; *Cooke* v. *United States,* 267 U. S. 517, 534–36; *In re Oliver,* 333 U. S. 257, 274–75.

summary conviction and punishment accords due process of law.[3]

There must be adequate facts to support an order for contempt in the face of the court. Contrary to the contention of the petitioner the state Supreme Court evaluated the facts to decide whether there was sufficient evidence to support the judgment of the trial court and held that there was. The opinion of the Texas Supreme Court states that the court set out to review the facts "for the purpose of determining whether they constituted acts sufficient to confer jurisdiction upon the court" to enter the contempt order.[4] In other words, the highest court of the state proposed to satisfy itself that there was substantial evidence to validate the judgment of contempt and to insure that petitioner was not "restrained of his liberty without due process of law." After a careful analysis of the facts as disclosed by the judgment of the

---

[3] *Ex parte Terry*, 128 U. S. 289, 313: "We have seen that it is a settled doctrine in the jurisprudence both of England and of this country, never supposed to be in conflict with the liberty of the citizen, that for direct contempts committed in the face of the court, at least one of superior jurisdiction, the offender may, in its discretion, be instantly apprehended and immediately imprisoned, without trial or issue, and without other proof than its actual knowledge of what occurred; and that, according to an unbroken chain of authorities, reaching back to the earliest times, such power, although arbitrary in its nature and liable to abuse, is absolutely essential to the protection of the courts in the discharge of their functions. Without it, judicial tribunals would be at the mercy of the disorderly and violent, who respect neither the laws enacted for the vindication of public and private rights, nor the officers charged with the duty of administering them."

See also *Cooke* v. *United States, supra,* 534; *Ex parte Hudgings*, 249 U. S. 378, 383.

[4] This rule is well established in Texas. *Ex parte Testard*, 101 Tex. 250, 106 S. W. 319; *Ex parte Dulaney*, 146 Tex. 108, 203 S. W. 2d 203. For other cases see the opinion in the instant case, *Ex parte Fisher*, 146 Tex. 328, 333, 206 S. W. 2d 1000, 1003.

trial court, the conclusion was reached that the conduct of the petitioner was clearly sufficient to support the power of the court to punish summarily the contempt committed in its presence.

The judgment of the Supreme Court of Texas must be affirmed. In a case of this type the transcript of the record cannot convey to us the complete picture of the courtroom scene. It does not depict such elements of misbehavior as expression, manner of speaking, bearing, and attitude of the petitioner. Reliance must be placed upon the fairness and objectivity of the presiding judge. The occurrence must be viewed as a unit in order to appraise properly the misconduct, and the relationship of the petitioner as an officer of the court must not be lost sight of.[5]

The state Supreme Court pointed out that its practice of submitting special issues to the jury was adopted in order to remove from the jury's consideration the effect on the ultimate outcome of the case of their answers to questions of disputed facts.[6] In this case, the jury might be tempted to find a long incapacity or a severe injury if they knew the amount of recovery was limited by the employee's wage and rate of compensation. Counsel are required to confine their arguments to the evidence and must not touch upon matters withdrawn from the consideration of the jury.[7] Yet here, petitioner, a member of the Texas bar, ignored this rule and at the outset of his address to the jury exceeded the bounds of permissible argument by trying to tell the jury the maximum compensation which their answers to the special issues would allow his client. On objection of the opposing counsel peti-

---

[5] *Clark* v. *United States*, 289 U. S. 1, 12.

[6] *Ex parte Fisher*, 146 Tex. 328, 334–335, 206 S. W. 2d 1000, 1004–1005.

[7] Rule 269, Vernon's Texas Rules of Civil Procedure; *Ramirez* v. *Acker*, 134 Tex. 647, 138 S. W. 2d 1054.

tioner was stopped by the trial judge, but in the face of the court's decision he persisted in trying to tell the jury the effect of their answers. He switched his explanation of the stipulated amount of recovery from the words "one hundred and twenty-five weeks times the average weekly compensation rate" to "one hundred and twenty-five weeks compensation, at whatever compensation the rate will figure under the law." The change obviously brought before the jury information on the limitation to the amount of recovery—a factor held by the trial judge inadmissible under the special issues. In addition to this stubborn effort to bring excluded matter to the knowledge of the jury, the petitioner twice refused to heed the court's admonition not to argue the point. As the Supreme Court said,

> "It was the duty and power of the trial judge in the trial of the compensation suit to determine the type, manner and character of the argument before the jury. Of course his rulings thereon were subject to review in the appellate courts, but he has the power to make them whether right or wrong. If they are erroneous the injured party has the plain, simple and adequate remedy of appeal. It was thus the duty of counsel to abide by his decisions even if erroneous; and if any rights of his clients were violated the remedy was by exception and appeal. Any other procedure would result in mockery of our trial courts and would destroy every concept of orderly process in the administration of justice." [8]

This judgment of the Supreme Court turned on their understanding of Texas law and practice. We see nothing in their opinion or conclusion that indicates any disregard of petitioner's rights. The conduct of a judge

---

[8] 146 Tex. 328, 335, 206 S. W. 2d 1000, 1005; cf. *United States* v. *United Mine Workers*, 330 U. S. 258, 293, 302–303.

should be such as to command respect for himself as well as for his office. We cannot say, however, that mildly provocative language from the bench puts a constitutional protection around an attorney so as to allow him to show the contempt for judge and court manifested by this record, particularly the last few sentences of the altercation.

The judgment of the Supreme Court of Texas accordingly is

*Affirmed.*

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BLACK concurs, dissenting.

The power to punish for contempt committed in open court was recognized long ago as a means of vindicating the dignity and authority of the court. See *Ex parte Terry,* 128 U. S. 289, 301–304 and cases cited. But its exercise must be narrowly confined lest it become an instrument of tyranny. Chief Justice Taft in *Cooke* v. *United States,* 267 U. S. 517, 539, warned that its exercise by a federal court is "a delicate one and care is needed to avoid arbitrary or oppressive conclusions." The same restraint is necessary under our constitutional scheme when state courts are claiming the right to take a person by the heels and fine or imprison him for contempt without a trial or an opportunity to defend. In *Bridges* v. *California,* 314 U. S. 252; *Pennekamp* v. *Florida,* 328 U. S. 331; and *Craig* v. *Harney,* 331 U. S. 367, we narrowly restricted the power to punish summarily for constructive contempts in order to maintain freedom of press and of speech in their preferred position. Freedom of speech in the courtroom deserves the same protection.

Fisher's conviction is sustained because it is said that he persisted in trying to tell the jury what the judge held to be improper. I do not so read the record. The judge sustained an objection to Fisher's attempt to get

the average weekly compensation of the injured person before the jury, as appears from the following colloquy:

"By Mr. Cox: The jury is not concerned with the computation; it has only one series of issues. That is not before the jury.

"By the Court: That has all been agreed upon.

"By Mr. Fisher: I think it is material, Your Honor, to tell the jury what the average weekly compensation is of this claimant so they can tell where he is.

"By the Court: They are not interested in dollars and cents.

"By Mr. Fisher: They are interested to this extent—

"By the Court: Don't argue with me. Go ahead. I will give you your exception to it.

"By Mr. Fisher: Note our exception.

"By the Court: All right."

Fisher never again tried to get the amount of weekly compensation of the injured person into the record. He abided by the ruling of the judge. What next happened was as follows:

"By Mr. Fisher: This negro, as I stated, can only recover one hundred and twenty-five weeks compensation, at whatever compensation the rate will figure under the law.

"By Mr. Cox: I am objecting to that discussion, Your Honor, as to what the plaintiff can recover.

"By the Court: Gentlemen! Mr. Fisher, you know the rule, and I have sustained his objection.

"By Mr. Fisher: I am asking—

"By the Court: Don't argue with me. Gentlemen, don't give any consideration to the statement of Mr. Fisher.

"By Mr. Fisher: Note our exception. I think I have a right to explain whether it is a specific injury or general injury."

Fisher's statement that, "This negro, as I stated, can only recover one hundred and twenty-five weeks compensation, at whatever compensation the rate will figure under the law," did not mention the matter of "dollars and cents" that the judge held irrelevant. It was not a new attempt by Fisher to get the "average weekly compensation" before the jury. Yet the record can be read as meaning that they were the only specific matters on which the judge had ruled. As Justice Sharp, dissenting in the Texas Supreme Court, stated, "This statement does not indicate that relator was disobeying the ruling of the court, but, on the contrary, shows that he was trying to obey same." It also means to me that he was seeking to perfect the record so as to preserve all of his points.

It is said that the statement was improper under Texas practice. But it took a ruling of the Texas Supreme Court to make it so, and even then Justice Sharp dissented. If Texas law on the point is so uncertain that the highest judges of the State disagree as to what is the permissible practice, is a lawyer to be laid by the heels for pressing the point? Yet it was for pressing the point of law on which the Supreme Court of Texas divided that Fisher was held in contempt.

It is said, however, that such elements of misbehavior as expression, manner of speaking, bearing, and attitude of Fisher may have given the words a contemptuous flavor that the cold record does not reveal. I do not think freedom of speech should be so readily sacrificed, even in a courtroom. If that were the offense, it is not too much to ask that the judge make it the ground of his ruling. Certainly the judge did not purport to fine and imprison Fisher for the manner of making the objection, for the tone of his voice, or for his facial expression. The dispute was merely over the bounds of permissible comment before a jury. Fisher having been stopped at one point tried another strategy. He was

acting the role of a resourceful lawyer. The decision which penalizes him for that zeal sanctions censorship inside a courthouse where the ideals of freedom of speech should flourish.

There is for me only one fair inference from the record—that the judge picked a quarrel with this lawyer and used his high position to wreak vengeance on him. It is shown, I think, by the commencement of the critical colloquy:

> "By the Court: I will declare a mistrial if you mess with me two minutes and a half, and fine you besides.
>
> "By Mr. Fisher: That is all right. We take exception to the conduct of the Court.
>
> "By the Court: That is all right; I will fine you $25.00."

This lawyer was the victim of the pique and hot-headedness of a judicial officer who is supposed to have a serenity that keeps him above the battle and the crowd. That is as much a perversion of the judicial function as if the judge who sat had a pecuniary interest in the outcome of the litigation. *Tumey* v. *Ohio,* 273 U. S. 510.

MR. JUSTICE MURPHY, dissenting.

Petitioner told the jury three times, without objection, that his client was entitled to compensation for one hundred and twenty-five weeks. He then began discussion of the "average weekly compensation," and the Court told him that the jury was "not interested in dollars and cents." To this ruling he excepted, believing that the amount of possible recovery should be considered by the jury. He then repeated what he had said three times before, without objection, on a different subject, and was told that he should not "mess with" the court. Quite naturally, he objected to the court's conduct; Texas .

decisions make it clear that remarks "calculated to reflect upon the counsel and prejudice his client's case with the jury . . . constitute reversible error." *Dallas Consol. Electric St. R. Co.* v. *McAllister,* 41 Tex. Civ. App. 131, 137, 90 S. W. 933. But petitioner was held in contempt. And as he objected, his penalty was successively raised. Finally the court told the sheriff: "Don't let him stand there. Take him out."

A trial judge must be given wide latitude in punishing interference with the orderly administration of justice. See *Ex parte Terry,* 128 U. S. 289; *Cooke* v. *United States,* 267 U. S. 517. But the summary nature of contempt proceedings, the risk of imprisonment without jury, trial, or full hearing, make this the most drastic weapon entrusted to the trial judge. To sanction the procedure when it is patent that there has been no substantial interference with the trial, when a judge has used his position and power to successively increase the penalty for simple objections, is, I believe, a denial of due process of law. The contempt power is an extraordinary remedy, an exception to our tradition of fair and complete hearings. Its use should be carefully restricted to cases of actual obstruction. In my opinion, this record of petty disagreement does not approach that serious interference with the judicial process which justifies use of the contempt weapon. Whatever the situations making this weapon necessary, it is plain to me that this is not one of them.

An appellate court can rarely correct abuse such as this. "If the judge intends to be unfair, the trial will be a farce no matter how many detailed rules we provide for him." McElroy, *Some Observations Concerning the Discretions Reposed in Trial Judges by the American Law Institute's Code of Evidence,* Model Code of Evidence, pp. 356, 358. A printed record cannot reveal

inflections and gestures, the tenor of a judge's conduct of a trial—matters which make his position the most responsible in the daily administration of a fair judicial system. See Rheinstein, *Who Watches the Watchmen?* in Interpretations of Modern Legal Philosophies (New York, 1947), p. 589. In recent years we have seen a pronounced tendency to leave many matters in the discretion of the trial judge. McElroy, *supra;* Yankwich, *Increasing Judicial Discretion in Criminal Proceedings,* 1 F. R. D. 746. The movement, which rests on the assumption that the judge is wise and impartial, should make us quick to upset his determinations in the few cases which clearly demonstrate light regard for the principles that should guide a responsible jurist.

I would reverse the judgment.

MR. JUSTICE RUTLEDGE, dissenting.

Without recounting further than is done in other opinions the facts of this unfortunate episode, I have concluded that the record here discloses answers or remarks made by petitioner to the court which, in some instances, may well have justified punishment for contempt, but for one circumstance. That is, I regret to say, the conclusion to which I have been forced from the record as a whole that in the course of the colloquy and especially in the rapid succession of fines, commitment to jail, and order for removal from the courtroom, as well as in the unjudicial language employed by the judge, the trial court acted in the heat of temper and not with that calm control which the fair administration of judicial office commands under all circumstances.

Lawyers owe a large, but not an obsequious, duty of respect to the court in its presence. But their breach of this obligation in no case justifies correction by an act or acts from the bench intemperate in character, over-

riding judgment. Since the case comes here upon the sequence of events taken as an entirety, I do not undertake to separate one portion of the judgment from another. Accordingly, as the case stands here, I must take the entire sentence as infected with the fault I have noted. It follows, in my view, that the judgment should be reversed. Whatever the provocation, there can be no due process in trial in the absence of calm judgment and action, untinged with anger, from the bench.