## In re the Honorable Michael R. GIBSON.

### No. 08-90-00052-CR.

Court of Appeals of Texas, El Paso.

Nov. 14, 1990.

Charles Louis Roberts, El Paso, for Gibson.

Before OSBORN, C.J., and FULLER, WOODARD and KOEHLER, JJ., en banc.

## OPINION

PER CURIAM.

This is an original proceeding in which an attorney, after response to a show cause notice, was found to be in contempt of court and assessed a fine of $300.00.

On December 20, 1989, following an earlier guilty plea, judgment and sentence were entered in State v. Armando Lopez Torres, cause no. 56432, on the docket of the 171st Judicial District Court of El Paso County. Punishment was assessed at thirty-five years' imprisonment on one count of murder, habitualized. The following day, December 21, the Hon. Michael R. Gibson, newly retained for purpose of appeal, filed a Motion in Arrest of Judgment, Motion for New Trial and Motion to Extend Time for Presentation and Hearing of Motion for New Trial. The additional time was sought to investigate and possibly develop a record of ineffective assistance on the part of trial counsel. Upon notice of appeal to this Court, the case was assigned cause number 08–90–00052–CR, Armando Torres v. State of Texas. On February 14, 1990, Mr. Gibson filed with this Court a Motion to Suspend the Rules of Appellate Procedure, referring to the time limit for motion for new trial proceedings. That motion was denied in a published opinion. *Torres v. State*, 804 S.W.2d 918 (Tex.App.—El Paso, 1990). The opinion erroneously relied upon the Tex.R.App.P. 2(b) prohibition of suspending provisions of the Code of Criminal Procedure, the former code provision for new trial having been repealed and incorporated in the Rules of Appellate Procedure. In any event, the denial was also founded upon the prohibition in Rule 2(a) of any suspension which would have the effect of extending or enlarging this Court's jurisdiction.

On April 18, 1990, the transcript was filed, and on May 9, the statement of facts was filed pursuant to an extension of time. On May 17, 1990, Mr. Gibson filed on Torres' behalf a Motion to Abate Appeal, seeking an opportunity to conduct an evidentiary hearing in the trial court as to ineffective assistance of trial counsel. That motion was also denied by published opinion. *Torres v. State*, 804 S.W.2d 918 (Tex.App.—El Paso, 1990). In that opinion, the Court suggested that even if such a procedure were available under Tex.R. App.P. 2 and 40(b)(2), a demonstration of good cause should include a bona fide point

of error alleging ineffective assistance and identification, in good faith, of the specific deficiencies suspected.

On June 12, 1990, Mr. Gibson filed a Motion for Rehearing, drawing our attention to the incorrect reference to the Rule 2(b) prohibition. The Court issued a third opinion overruling the rehearing request, conceding the partial error in the prior opinions. Still with no suggestion of specific trial deficiencies before it, the Court went on to suggest another vehicle for relief, that being a habeas corpus proceeding in the trial court, which would permit developing a record and which would in all probability, by accelerated appeal, catch up with the direct appeal for consolidated submission. *Torres v. State,* 804 S.W.2d 918, 919 (Tex.App.—El Paso, 1990).

On June 29, a letter was sent to Mr. Gibson by the Clerk of the Court indicating the overdue status of his brief. On July 5, 1990, Mr. Gibson replied by letter that he could not submit a brief because he had "no record" available. On July 24, 1990, a letter was sent to Mr. Gibson, drafted by this Court's Staff Attorney, with judicial approval, and mailed under the signature of the Clerk of the Court. This letter again acknowledged Mr. Gibson's letter, but pointed out that there was in fact a record consisting of a transcript and statement of facts, albeit one not supporting his desired point of error of ineffective assistance of counsel. The need to resolve the appeal and counsel's need to file a brief were repeated. Having received no response to this letter, on August 10, 1990, the Court issued an order that the brief be filed not later than August 31, 1990. This order crossed in the mail with Mr. Gibson's letter of August 13 which was a response to the Court's prior letter of July 24.

Certain portions of Mr. Gibson's letter were considered contemptuous of the Court. The Court decided to conduct a hearing under the procedures applicable in situations of constructive contempt, contemplating a criminal contempt sanction under the provisions of Tex.Gov't Code

Ann. § 21.002 (Vernon 1988 and Supp. 1990). On September 17, 1990, the Court issued a show cause order, directing that Mr. Gibson appear on October 12 to show cause why he should not be held in contempt and punished for such contempt. The order included a reproduction of Mr. Gibson's August 13 letter, with the allegedly contemptuous portions underlined for purpose of notice.

The evidentiary hearing of October 12 was conducted by this Court en banc. *Ex parte Werblud,* 536 S.W.2d 542 (Tex.1976); *Ex parte Duncan,* 127 Tex. 507, 95 S.W.2d 675 (1936). Mr. Gibson appeared with counsel. Mr. Gibson was advised of his Fifth Amendment privilege against self-incrimination. The proceedings were recorded by a certified court reporter. At the outset, the Court took judicial notice of the entire file in Torres v. State, including all correspondence between the Court and Mr. Gibson. Counsel for Mr. Gibson was permitted to make an opening statement, call witnesses, introduce exhibits and present final argument. Two witnesses were called—the Staff Attorney of the Court and Mr. Gibson. The Court retired to deliberate and returned with a finding of criminal contempt. Counsel was then permitted to address the issue of punishment. After further deliberation, the Court assessed a fine of $300.00.

The Court entered express findings of fact and conclusions of law for the record:

(1) That the Hon. Michael R. Gibson is an officer of the Court and an experienced practitioner in criminal law;

(2) That Mr. Gibson wrote the letter of August 13, identified as Exhibit No. Three at the show cause hearing;

(3) That such letter was directed to the Clerk of the Eighth Court of Appeals;

(4) That such letter was filed on August 15, 1990 in Cause No. 08–90–00052–CR, styled Armando Lopez Torres v. The State of Texas;

(5) That the contemptuous language with reference to "sleazy criminal defense lawyers" was not language used in any opinion of the Court; and

(6) That the language used in such letter is contemptuous of this Court and has impeded, obstructed and disrupted this Court's function, and has resulted in an obstruction of the administration of justice in this Court.

■ The Court's findings and conclusions were based upon a standard of beyond a reasonable doubt. The Court is well aware that personal insult alone is not a sufficient basis for either direct or constructive contempt. *Ex parte O'Fiel*, 93 Tex.Crim. 214, 246 S.W. 664 (1923); *Ex parte Ireland*, 38 Tex. 344 (1873). Contempt is no remedy for offense to the personal sensibilities of judicial officers. *In re Little*, 404 U.S. 553, 92 S.Ct. 659, 30 L.Ed.2d 708 (1972). A thin skin is no asset for such office. W. Kilgarlin, *Contempt of Court in Texas—What You Shouldn't Say to the Judge*, 38 Baylor L.Rev. 291, 328–329 (1986). Nonetheless, while shrugging off the slings and arrows directed at his person, a judge is obligated to preserve and protect his office and his function in the process of administering justice from "the proud man's calumny." Consequently, the contempt power may only, indeed must, be exercised when the contemptuous conduct, written word, spoken word or deed, interrupts or obstructs the function of the Court. Compare *Ex parte Soape*, 171 Tex.Crim. 251, 347 S.W.2d 621 (1961).

■ The Court's decision has also been reached with due regard for the additional caution which must be applied where the contempt takes the form of the written or spoken word of an attorney. On the one hand, the obstructive consequences of such conduct are less readily apparent than in the case of a physical disturbance of the Court's function. *In re McConnell*, 370 U.S. 230, 236, 82 S.Ct. 1288, 1292, 8 L.Ed.2d 434, 438 (1962). In addition, it is the attorney's function and duty to speak and write as an advocate for his client, and contempt power must be exercised with extreme caution so as not to abridge rights of free speech and representation by counsel. With these precepts in mind, the present decision was cautiously and painfully reached.

■ In essence, Mr. Gibson's letter accused the Court of a bias against the criminal defense bar and himself in particular. In itself, such a charge would of course not be contemptuous. Otherwise, an attorney would be unable to properly seek recusal on such a basis. Compare *Holt v. Virginia*, 381 U.S. 131, 85 S.Ct. 1375, 14 L.Ed.2d 290 (1965). Mr. Gibson's remarks, however, go beyond a mere charge of bias. His letter asserted that such bias was not merely reflected in conscious or unconscious exercise of discretion by this Court but has been manifested by the Court's failure to have "followed the plain intent of the Appellate Rules ...." It charged that the Court preferred instead "seeking ways to publicly insult criminal defense lawyers ...." The letter makes reference to two of the published opinions on Mr. Gibson's motions and attributed to those opinions "a number of snide references to sleazy criminal defense lawyers ...." A plain reading of those opinions, individually or together, reflects no such references, either express or implicit. These assertions in Mr. Gibson's letter were not merely accusatory of bias, but were insulting and false.

■ The fact that Mr. Gibson has persisted in refusing to accept the Court's position with regard to the state of the record, need for a brief and suggested alternative vehicles to address his desired points of error, has caused delay in the progression of the *Torres* appeal. We do not fault those efforts on his part as an advocate. The August 13 letter, however, exceeded the bounds of vehement advocacy. His continuing efforts to expand the record on behalf of his client became embodied in a contemptuous affront to the office and judicial functioning of this Court. While not as apparent as a disruptive tantrum in the trial court, this written contempt has in fact contributed additional delay in the administration of justice, attributable not to lawyerly efforts but to the contemptuous conduct alone. The trial court may be a more likely arena for such contempt, but the appellate court is not immune to such disruption, which by the very nature of the appellate process will

usually be of a written or oral nature. Even noncontemptuous challenges to a judge who is truly guided by bias or animus will work no impediment to the mechanical progression of court proceedings, for such a judge will retaliate in the virtually impervious realm of discretionary decision-making, free of the safeguards of contempt rules. On the other hand, contemptuous challenges, such as Mr. Gibson's, lodged against a Court which is sincerely attempting to resolve litigation impartially, will inevitably produce additional delay and disruption for the sincere judge will be motivated to divert his attention and energy and that of his staff to additional, unwarranted self-scrutiny. The judicial office is an easy calling for the unprincipled, but a demanding responsibility for the dedicated.

The lawyer is an advocate, principally guided by his duty to his client in an adversary role. That coupled with the spontaneity of the trial court often serves to excuse excesses of lawyer conduct, verbal or otherwise. The judge is not an advocate but must sit in impartial posture, guided by a neutral duty to the law which his office embodies and the rights of both litigants. His excesses are never excused. Contempt power is at times necessary to preserve that neutrality. The constant demand for impartiality is difficult enough to satisfy without intentional provocation by an attorney, which will either drive the judge into an adversarial posture or force him to curtail the proceedings until his capacity for impartiality can be restored.

■ Mr. Gibson denied any *intent* to be contemptuous and points to his prefatory disclaimer. Such a disclaimer is of no moment when at complete odds with what follows. One is held to intend the natural consequences of his conduct. Mr. Gibson admittedly intended that his language reach the judges of this Court and that the very harshness of such language (as distinguished from mere vehemence) provoke by accusation a reassessment of the Court's rulings on his prior motions. His legal arguments had been rejected upon two motions and a Motion for Rehearing before

this Court, and were not entertained in two subsequent entreaties to the Court of Criminal Appeals. By implicit admission, Mr. Gibson sought to accomplish by inaccurate accusations of bias and disregard of the law what he could not accomplish by lawyerly argument. That is a contemptuous intent. Compare *Ex parte Fisher*, 146 Tex. 328, 206 S.W.2d 1000 (1947), aff'd sub nom., *Fisher v. Pace*, 336 U.S. 155, 69 S.Ct. 425, 93 L.Ed. 569 (1949) (contempt by persistence in arguing with court ruling *even if not* in disrespectful language).

■ Further indication of Mr. Gibson's attitude which he acknowledged the Court could assume occurred between him and Deputy Clerk Pacheco following his receipt of the clerk's letter indicating the need to file a brief. Referring to the judges of this Court, Mr. Gibson instructed Ms. Pacheco to "tell them to stick it in their ear [sic]." This incident occurring before the writing of the contemptuous letter is not the basis for the present contempt action, but is probative with regard to Mr. Gibson's state of mind.

■ Mr. Gibson also denied any intent or knowledge that his letter would be filed of record, formally communicated to the Court or otherwise "published." See *Ex parte Ireland*, 38 Tex. 344, 358–360 (1873). This letter would have, in any event, been routinely filed as a response to prior inquiry by the clerk as to the status of the brief. Even accepting this experienced trial and appellate attorney's denial of knowledge that such a communication would be filed of record, the evidence before this Court amply satisfies the element found wanting in *Ex parte Ireland*. There the issue was a document which the Supreme Court could not even definitely characterize by type and therefore could not determine whether it was intended as a private, personal communication to the judge or as an official communication. It was addressed to the judge himself and merely handed to the court clerk. It did not request filing. In fact at the time of the first summary judgment of contempt, it had not been filed. It was only filed at the direction of the district judge after the first vacating of

the contempt judgment by the Supreme Court. Even that filing was contemporaneous with a filing by the contemnors of a formal withdrawal of the "offensive brief," prior to the second trial court contempt proceeding.

In the present case, the letter was addressed to the clerk of the court, and by express admission, the content was intended to be conveyed to the judges. This amounts to a "publication" of the false, contemptuous accusation to a third party or parties—not merely a private communication to the judges. Filed or not, this intended mode of communication was "official" and disruptive of the Court's function by the choice of transmission to the clerk of the court for her contemplation and conveyance to other members of the Court's staff and ultimately to the judges themselves. Beyond that, this letter was filed immediately upon request, unlike the "paper" in *Ex parte Ireland.* Further distinction is found in the last sentence of Mr. Gibson's letter:

I need to make of record the matters contained in our correspondence so that when the case gets to the Court of Criminal Appeals, I will have some protection.

The letter does not request making a record of matters discussed or addressed in the correspondence, as paraphrased in Mr. Gibson's testimony and brief, but of the "matters contained in our correspondence," which includes the contemptuous statements in the August 13 letter.

■ Although not reargued in his brief, Mr. Gibson's testimony suggested that these statements in his letter of August 13 should be excused from any contempt finding since they were provoked by this Court. The legal theory is cognizable. *Offutt v. United States,* 348 U.S. 11, 75 S.Ct. 11, 99 L.Ed. 11 (1954); *Fisher v. Pace,* 336 U.S. at 162–163, 69 S.Ct. at 428, 93 L.Ed. at 574. Even *Ex parte Curtis,* 568 S.W.2d 363 (Tex.Crim.App.1978), relied upon by Mr. Gibson, in our estimation reflects an exonerating descent by the trial judge into personal, injudicious argument with trial counsel. Having exercised the self-scrutiny referred to above, both as a result of the August 13 letter and as a due process necessity in this contempt proceeding, we reject the application of this provocation defense to the present record.

Mr. Gibson testified that the "harsh" language of his August 13 letter was provoked by the Court's letter of July 24, particularly the last sentence of the second paragraph:

This appeal cannot remain in limbo pending contemplation of vehicles for expanding the record in the speculative pursuit of meritorious points of error not presently substantiated.

Bearing in mind that the Court's letter commenced by recognizing Mr. Gibson's tactical dilemma and the Court's procedural dilemma, an assessment of this sentence, in toto or phrase by phrase, fails to disclose any pejorative characterization of Mr. Gibson, his efforts in this case or the character of the criminal defense bar in general. The appeal cannot remain in limbo—a fact and phrasing not inappropriate and not critical in light of three previously overruled defense motions before this Court and two counter-proposals by the Court not pursued by Mr. Gibson. Indeed, as of this date, despite an express order of this Court to file an appellate brief by August 31, there is no brief before this Court which complies with the Texas Rules of Appellate Procedure. On September 14, 1990, Mr. Gibson filed a document purportedly to comply with the Court's order, but which cannot be characterized as a brief. It presents a single ineffective assistance of counsel point of error, without authority, argument or citation to the record. The matter of compliance with the Court's order of August 10 is not presently before the Court, but the present state of the record is germane to the appropriateness of the "limbo" reference.

"Contemplation of vehicles for expanding the record" is also appropriate and noncritical in light of the back-and-forth exchange between the Court and Mr. Gibson as to the procedural prospects for developing an evidentiary record to support an ineffective assistance of counsel complaint. Mr. Gibson conceded at the outset of his testimony

that "professionally" the phrase "speculative pursuit" was accurate, given the state of the record. The same must be equally true of the phrase "points of error not presently substantiated." Most significant in highlighting the inappropriateness of Mr. Gibson's apparently injured reaction and interpretation, is the fact that the Court acknowledged his goal as "meritorious points of error," not frivolous or groundless. In short, the Court's letter of July 24 presented no justification for Mr. Gibson's contemptuous response.

In fact, despite testimony that the July 24 letter was the provoking event, Mr. Gibson's letter of August 13 makes no reference to the content of that letter. Instead, Mr. Gibson attributes his feeling of insult to the prior opinions of the Court. His letter indicates that those opinions contain "a number of snide references to sleazy criminal defense lawyers and their efforts to conduct fishing expeditions." He further characterized those opinions as failures to follow "the plain intent of the Appellate Rules," see *In re Buckley*, 10 Cal.3d 237, 514 P.2d 1201, 110 Cal.Rptr. 121 (1973), *cert. denied*, 418 U.S. 910, 94 S.Ct. 3202, 41 L.Ed.2d 1156 (1974), the Court preferring instead "to publicly insult criminal defense lawyers...." In a further exercise in self-scrutiny, the Court has reexamined its opinions of February 15, June 6 and June 27, 1990. They are devoid of any castigation of "sleazy criminal lawyers," express or implicit, snide or otherwise, as a class, in Mr. Gibson's case in general or in the *Torres* appeal in particular. The first opinion, while denying the relief requested, suggested that Mr. Gibson at least frame a specific ineffective assistance of counsel point before this Court for further consideration of abatement. By May 17, 1990, when the Motion to Abate was filed, Mr. Gibson had been representing Torres for nearly five months. Regardless of the motion for new trial timetable, he had had an opportunity to confer (even if only by mail) with his client and trial counsel. Nonetheless, the Motion to Abate did not, as previously suggested by the Court, identify any particular deficiencies in trial representation which Mr. Gibson had good reason to

suspect had occurred. The Court again denied relief emphasizing a desire for good faith specification of suspected trial counsel lapses so that any abatement procedure adopted by the Court would not be used as "fishing expedition resulting in additional appellate delay." "Fishing expedition" is not an inherently pejorative phrase. *See e.g. Ballentine's Law Dictionary*, 478 (3d ed. 1969). Nor is "additional appellate delay" synonymous with purposeful, improper delay. Consequently, neither phrase produces an implicit reference to "sleazy criminal defense lawyers." During the hearing, counsel for Mr. Gibson inquired whether or not "fishing expedition" is not a phrase frequently associated with the sustaining of an objection to defense inquiry. In fact, it is frequently associated with the curtailment of inquiry by either side of a lawsuit, civil or criminal. Furthermore, the sustaining of an objection to inquiry with reference to fishing expedition merely indicates that the questioning is not permitted, not that the inquiry is purposefully and knowingly improper, i.e. "sleazy." Furthermore, neither the opinions nor the letter of July 24, suggest even a "fishing expedition" on Mr. Gibson's part. The first two opinions invited specification of suspected ineffective assistance as an element of good cause for abatement to preclude such vehicle from future use as a fishing instrument. The third opinion speaks of a need to prevent "what *could well become* a routine defense practice of seeking such abatement for random trolling of the record for signs of ineffective assistance." (Emphasis added). The "random trolling" phrase is nothing more than a synonymous depiction of "fishing expedition," which as stated above is not inherently pejorative *and* which is only addressed in the opinion as a *future* circumstance to be avoided.

Each review of this record, the opinions and correspondence, leads the Court to the same absolute surprise at Mr. Gibson's response. By his own testimony, he has never experienced any personal conflict with or castigation by members of this Court, in the trial court or on appeal. The three opinions and the July 24 letter from this

Court consistently acknowledge Mr. Gibson's presumed good faith in confronting a procedural impediment to his desired point of error. The third opinion admits a "quandary" in wishing to reach the speediest appellate resolution of an ineffective assistance complaint but limitation of procedural relief by the constraints of Appellate Rule 2. While denying the relief requested, the Court offered two suggestions, neither of which was pursued by Mr. Gibson. In the third opinion, our suggestion was prefaced by the phrase, "[i]n recognition of the dilemma faced by both the Court and the Appellant. . . ." Had our opinions and letter reflected a belief or depiction that Mr. Gibson was engaged in "sleazy" defense tactics, we would hardly have employed such a phrasing.

At the show cause hearing, Mr. Gibson testified that the Court's letter of July 24 was unusual in his experience. It was not an order of the Court, signed by a judge or per curiam, yet it clearly presented a professional legal assessment beyond the scope of communication associated solely with the Court's nonlawyer, administrative staff. Those aspects of Mr. Gibson's interpretation were accurate. The letter was unusual, albeit not unique. Instead, however, of viewing the letter as an extended courtesy, a professional communication from the Court seeking resolution of the difficulty short of formal order, impasse and contempt, Mr. Gibson arbitrarily formulated a totally unwarranted interpretation that he had been individually, professionally insulted by the Court, and in response, he embarked upon a course of disruptive, contemptuous behavior.

We emphasize the distinctive context of this contempt. The vast majority of published authority on the issue of contempt by attorneys, typified by the cases cited by Mr. Gibson and cited herein, address direct contempts, committed in the trial court and subjected to summary contempt punishment by the offended court. While we feel that the present record leading to the contempt judgment withstands the tests set out in these cited cases, the result is even more appropriate given the fact that this contempt occurred at the appellate court level, as a constructive contempt, with the full range of due process protections available to Mr. Gibson and an extended opportunity for withdrawal of the offensive letter, retraction or apology. As previously noted, legal deference to the rights of a client and common sense appreciation for the heat of battle *in the trial court* appropriately temper judicial responses to the vehement excesses of an attorney who is trained, licensed, hired and ethically bound to *advocate* in an adversarial arena. As a result, summary contempt punishment for direct trial court contempt is appropriately subjected to more intense scrutiny by the reviewing court. In this case, while we expect, as a matter of law and past experience, Mr. Gibson to strike hard blows for his client, he is not entitled to the same mitigating consideration as an attorney reacting to the spontaneous demands of the trial court. Indeed, Mr. Gibson testified that while his emotions may have been running high at the time of his telephonic exchange with Deputy Clerk Pacheco, requesting that she, "tell them [the judges of the Court] to stick it in their ear [sic]," he wrote the August 13 letter in a cold, deliberate frame of mind. The trial attorney may sometimes be excused for losing sight of who is his true adversary, that is not the case in the appellate court. Despite the personal sentiments of attorneys, we justices are not their adversary.

In a case where counsel is truly confronted with a biased judge or justice who has allowed himself to descend into an adversarial role, the law affords vehicles for relief—from recusal to preservation of error and appellate review. Even in such a case as that, a disruptive assault upon the court, physical or oral or written, is not an acceptable remedy. *Fisher v. Pace*, 336 U.S. at 162, 69 S.Ct. at 428, 93 L.Ed. at 574.

This Court has never been and is not today an adversary of Mr. Gibson, and this Court will not be thrust into that posture by his contemptuous conduct. In some readily apparent instances, reflected in some of the cited cases, the exercise of contempt power may be the manifestation

of personal anger, loss of impartiality and adversarial response by a judicial officer. A proper exercise of contempt power, however, should be viewed and upheld as an essential vehicle by which a court preserves its impartiality.