## In re CHAIFETZ.

### No. 827.

Municipal Court of Appeals for the District of Columbia.

Argued July 11, 1949.

Decided Aug. 5, 1949.

---

whether the case could be settled, if possible."

In the discussion in the judge's chambers plaintiff's attorney asserted that his client had performed two jobs for defendant but had been paid for only one. In reply Mr. Chaifetz displayed a cancelled check on the back of which, over the plaintiff's signature, was the endorsement: "For Mrs. Frances Haley. In full payment for all labor, and materials to date at 206 Ascot Place N. E." Plaintiff's attorney, on questioning, admitted that all work in litigation had been done before the date of the check, September 29, 1947.

It appears that appellant Chaifetz had written two letters for his client. One was in August before the check was sent to plaintiff, saying that the job had not been properly done. Another was written in October after the payment had been made and after receipt of a second bill claiming a balance due. Both the August and October letters were in the possession of plaintiff's attorney, Mr. Politz. When requested to produce the August letter, the following colloquy took place: "Attorney Politz said 'Your letter was written in October' (addressing himself to Attorney Chaifetz). Thereupon Attorney Chaifetz arose out of his chair, and addressing himself to Attorney Politz, said: 'Mr. Politz, I'm sick and tired of your lies and I don't intend to take any more of them.'"

Abraham Chaifetz, pro se, and Allen J. Krouse, Washington, D. C., for appellant.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

In this case an attorney was fined for contempt during a proceeding in a judge's chambers. He argues that he was not guilty of contempt and that the adjudication against him was without due process of law.

A suit on a plumbing bill had been filed against one Haley. The plaintiff was represented by Mr. Politz and the defendant by the appellant Mr. Chaifetz. The record reveals that when the case was about to go to trial the two attorneys were invited into the judge's chambers "to ascertain

Thereupon the judge announced: "Mr. Chaifetz, I hold you in contempt of court and impose a fine of $10." Mr. Chaifetz said: "I deny any contempt of Court and have no intention of paying the fine." The judge said: "In lieu of fine, the alternative will be two days in Jail." The judge then sent for the deputy marshal who entered the room with the judge's secretary and clerk. The record continues: "The adjudication of contempt and the imposition of sentence was summary; that is, defendant was not informed of any charges, not given an opportunity to make any explanation or defense, and occurred while only the judge and both counsel were alone in his chambers."

Quite recently we had occasion to review several of the basic principles of

the law of contempt. We noted there: "That under certain circumstances one may be summarily held in contempt and fined therefor is beyond question.· * * * But this power of a court is limited to a narrowly restricted type of contempt." Kelly v. United States, D.C.Mun.App., 65 A.2d 593, 594. We also cited other cases[1] and quoted from Cooke v. United States: "Due process of law, therefore, in the prosecution of contempt, except that committed in open court, requires that the accused should be advised of the charges and have a reasonable opportunity to meet them by way of defense or explanation. We think this includes the assistance of counsel, if requested, and the right to call witnesses to give testimony, relevant either to the issue of complete exculpation or in extenuation of the offense and in mitigation of the penalty to be imposed." [267. U.S. 517, 45 S.Ct. 395.]

Also we quoted from In re Oliver, 333 U.S. 257, 275, 68 S.Ct. 499, 509, 92 L.Ed. 682, which after repeating these principles, continued: "The narrow exception to these due process requirements includes only charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent 'demoralization of the court's authority * * * before the public.'"

In the Kelly case we held that because the trial court had no personal knowledge of the contempt, he was without power to summarily adjudge defendant in contempt and to fine him therefor. There the contemptuous remark had been made in a low voice, out of the hearing and personal observation of the judge. In this case the offensive remarks were made aloud rather than whispered, in the personal presence, hearing and observation of the judge.

 We think it· clear that the remarks in question here were contemptuous and amounted to misbehavior in the presence of the court.[2] To call another a liar in the presence of the court and while the court is in session amounts to contempt of court.[3] An attorney, as an officer of the court, must behave with propriety in the courtroom; else he may become guilty of contempt. "Counsel should always remember that the controversy with its attendant exasperations is his client's cause. Its aspirations, its irritations, its impulses, its interests, are not the lawyer's to visit upon the judge. * * * Counsel should not obtrude upon the court the passion, the prejudice, or the unreason of his client. These must be left outside the courtroom door. The controversy that crosses the threshold should be a controversy sifted by the intelligence and shaped by the conscience of the lawyer, not the turmoil of personal dispute."[4]

 It is also clear that the contempt here was in the presence of the court, in the judge's personal hearing, sight and observation. It is true that the misbehavior took place in the judge's chambers rather than the courtroom. But "in the presence of the court" generally means any place set apart for the use of any constituent part of the court while in session and includes such places as the courtroom itself, the judge's chambers, jury rooms, and the immediate vicinity such as hallways.[5] Consequently any act or conduct revealing disrespect for the dignity and authority of the court, or which tends to embarrass the administration of justice

[1] Fisher v. Pace, 336 U.S. 155, 69 S.Ct. 425; Cooke v. United States, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767; Ex parte Savin, 131 U.S. 267, 9 S.Ct. 699, 33 L.Ed. 150; Ex parte Terry, 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405.

[2] Code 1940, Supp. VI, § 11—756(c), specifically empowers the trial court "to punish for disobedience of any order, or contempt committed in the presence of the court by a fine not exceeding $50 or imprisonment not exceeding thirty days."

[3] United States v. Emerson, 25 Fed. Cas.No.15,050, page 1012, 4 Cranch C. C. 188, 4 D.C. 188; Gridley v. United States, 6 Cir., 44 F.2d 716, certiorari denied 283 U.S. 827, 51 S.Ct. 351, 75 L.Ed. 1441.

[4] United States v. Landes, 2 Cir., 97 F.2d 378, 381.

[5] 6 R.C.L., Contempt, § 5, P. 492; 17 C.J.S., Contempt, § 26, and cases cited. See also Ex parte Savin, supra.

in such places is "in the presence of the court."

Here the trial judge was attempting to settle the case, in an informal type of pretrial or conciliation proceeding. Such proceedings have long been sanctioned by usage in the Municipal Court and elsewhere, in the interest of expediting litigation, and saving trial time. Although only the judge and the two attorneys were actually present, the judge was acting in his judicial capacity and the hearing cannot be classified within the secret type of proceeding condemned by the Supreme Court in the Oliver case.[6]

Thus, measured by the elements outlined in the Oliver case, there was an act of misconduct, in what was essentially "open court," in the presence of the judge, and actually seen and heard by him.

Affirmed.

[6] In re Oliver, supra, 333 U.S. 257, 268-272, 68 S.Ct. 499, 92 L.Ed. 682. This case concerned a one-man grand jury investigation which, after the contempt had been committed, suddenly became a court in the nature of an inquisition or star-chamber proceeding, long anathema to Anglo-American jurisprudence.