In the Matter of George D. GATES.

No. 4443.

District of Columbia Court of Appeals.

Argued Sept. 16, 1968.

Decided Dec. 18, 1968.

Henry H. Jones, Washington, D.C., with whom Paul E. Miller, Washingthon, D.C., was on the brief, for George D. Gates.

Roger E. Zuckerman, Asst. U.S. Atty., for the United States. David G. Bress,

U.S. Atty., and Frank Q. Nebeker, Asst. U.S. Atty., were on the brief. Carl S. Rauh, Asst. U.S. Atty., also entered an appearance for the United States.

Before HOOD, Chief Judge, and FICKLING and KERN, Associate Judges.

KERN, Associate Judge:

Appellant, a local attorney, was held in contempt of court while appearing as defense counsel in a criminal proceeding before the trial court.[1] Appellant challenges the contempt order on the grounds that the procedure followed by the trial court in adjudging him in contempt failed to comply with the Federal Rules of Criminal Procedure and that his remarks, when viewed in the context of his entire colloquy with the court below, did not constitute contempt of court.

The relevant facts are adequately reflected by the transcript of the proceedings in the trial court sitting in Criminal Assignment Branch on July 17, 1967, with the important exception of one statement by the appellant. As to this statement, the trial court modified the transcript and we accept that modification for the reasons which we set out hereinafter. The transcript, as modified, shows the following exchange occurred between the trial judge and appellant:

"The Deputy Marshal: Your Honor, bond number ten and eleven, John Davis, James Arnold, step around. The charge, your Honor, as to Davis, unauthorized use of a motor vehicle; as to Arnold, unauthorized use, also carrying a pistol.

\* \* \* \* \* \*

"Mr. Gates: Good morning, your Honor.

"The Court: There are two defendants in front of me.

---

1. D.C.Code 1967, § 11–982(a) provides:
The District of Columbia Court of General Sessions may compel the attendance of witnesses by attachment, and, in any civil or criminal case or proceeding in the court, the judge may punish for disobedience of an order, or for contempt committed in the presence of the court, by a fine not exceeding $50 or imprisonment not exceeding 30 days.

"Mr. Gates: Yes, your Honor.

"The Court: You have Arnold, and I have Davis and Arnold on the felony case.

"Mr. Gates: Yes, sir.

"The Court: What is your pleasure?

"Mr. Gates: 'Not guilty,' and we are ready.

"The Court: Just a minute. You pleading 'not guilty' to which case?

"Mr. Gates: Both charges.

"The Deputy Marshal: He is representing both defendants, your Honor.

"The Court: I only have one defendant in here on a misdemeanor. Whom do you represent?

"Mr. Gates: John Davis and James Arnold.

"The Court: You represent Davis and—

"Mr. Gates: And Arnold.

"The Court: —Arnold?

"Mr. Gates: Right.

"The Court: And you pleading them both 'not guilty'?

"Mr. Gates: That's right.

"The Court: Authority, please. Read it to me right out of the book the right to plead 'not guilty' on the felony case.

"Mr. Gates: The one felony there? I want a preliminary hearing.

"The Court: I don't want you asking me questions; I just asked you a question. Where is your authority for pleading 'not guilty'?

"Mr. Gates: Your Honor, I didn't come before you to listen to a whole lot of stuff from you; I am not in the mood for it. I don't feel like it.

"The Court: Not in the mood? You are not in the mood for what?

"Mr. Gates: For a whole lot of stuff. You are trying to get me confused.

"The Court: Confused? I am trying to get something cleared up.

"Mr. Gates: If you want to confuse the issue, you can go ahead. You aren't going to allow me to speak.

"The Court: I am going to allow you to put on the record those authorities. I am going to hold you in contempt.

"Mr. Gates: That is up to you, your Honor.

"The Court: It is up to me. I am holding you in contempt and fining you fifty dollars, or you are going to have to serve ten days.

"Mr. Gates: You want me to pay it now?

"The Court: Yes, you can pay it right now.

"Mr. Gates: That is fine. Every time—

"The Court: I beg your pardon?

"Mr. Gates: Every time a lawyer comes before this Bench it's a whole lot of stuff. I am an officer of the court.

"The Court: Pay your fifty dollars.

"Mr. Gates: I want to say something else if I am going to—I—

"The Court: Let me clue you in—

"Mr. Gates: —I want to be respected, and every time a Negro lawyer comes before you there is a whole lot of stuff; and I am not going to take it. I am grown, and I am a man and an officer of this court; and I demand to be respected as such from you and anybody else. I am going to give you the same respect, and I want you to give it to me.

"The Court: Pay the fifty dollars, sir.

"Mr. Gates: Now, if you want to do anything to me, you can do it.

"The Court: I am going to fine you another fifty dollars—

"Mr. Gates: I want to be treated like a man and—

"The Court: —in default of which you are going to serve another ten days.

"Mr. Gates: —I am tired of it from you or any other judge. You respect me.

"The Court: Step him back. Take him out of here. Take him out."

On the same day as the proceeding described above took place, the trial court entered a judgment holding appellant in contempt of court twice and sentencing him to pay a fine of $50, or serve ten days in jail, in each instance. Appellant noted his appeal from such judgment and designated as part of the record, among others, the transcript of the proceedings. Shortly thereafter, the trial court lodged with this court a Minute Entry and four exhibits setting forth the events surrounding the contempt citations and pointing out in what ways the transcript of the proceedings failed to describe what in fact had occurred in open court. On August 7, 1967, we refused to accept these documents for filing but instead ordered the record remanded to the trial court for the purpose of correcting inaccuracies, if any, in the transcript and taking such further action as it deemed appropriate.

On September 1st, the trial court advised appellant's counsel in writing that it intended in five days therefrom to file a Statement of Proceedings and Evidence containing its description of what transpired in open court on July 17, 1967, as set forth in its Minute Entry, and it invited counsel

to submit any "additions, corrections, or deletions thereto and/or to confer about the matter." It does not appear from this record that appellant's counsel accepted the trial court's offer.

On September 7, 1967, the trial court did file a "Statement of Proceedings and Evidence and Certification" (Statement) in the form it deemed contemplated by Rule 42(a) of the Federal Rules of Criminal Procedure in which the judge described his encounter in open court with appellant. The trial court's description of the words spoken by appellant differs from the official transcript in only one material aspect. The transcript (p. 3) quotes appellant as addressing the court:

Your Honor, I didn't come before you with a whole lot of stuff; I am not in the mood for it. I don't feel like it.

■ The trial court in the Statement (p. 2) states that appellant said:

I didn't come before you to listen to a lot of stuff from you; I am not in the mood for it. I don't feel like it.

Since appellant has not challenged in this specific instance the accuracy of the trial court's recounting of his remarks, we accept the version contained in the Statement.[2] We also note that the version of appellant's remarks given by the trial judge is consistent with other parts of the colloquy reported in the transcript about which there is no question.

■ Appellant contends that his citation for contempt of court is defective because Rule 42(a) of the Federal Rules of Crim-

---

**2.** Appellant did move in this court to have the *entire* Statement stricken on the ground that the trial court had failed "to designate for the record or to proceed according to [this] Court's order and rules of this Court in preparing the record". Appellant's motion was denied. As we note in the text of our opinion above, the trial court's Statement, in accordance with this Court's directive, corrected the transcript, advised appellant in advance of the proposed correction and invited appellant to submit his version of what he had said in the instant proceeding, if he disagreed with the court's Statement. We think that the procedure used by the trial court in this instance complied with this Court's remand and rules. See D.C.Court of Appeals Rules 24 and 25.

inal Procedure [3] applies to his case and the trial court failed to comply with such rule. He argues that no formal certificate was ever filed by the trial court (1) that it saw or heard the allegedly contumacious conduct and (2) that such misconduct was committed in the presence of the court. Furthermore, appellant urges that the final order of contempt entered by the trial court failed to recite the facts upon which the finding of contempt was based as required by Rule 42(a). Appellant objects to the Statement filed by the trial court as having been untimely filed and being inadequate compliance with Rule 42(a).

Appellant grounds his argument that Rule 42(a) is here applicable upon Rule 13 of the D.C. Court of General Sessions Criminal Rules which states, "The Federal Rules of Criminal Procedure shall apply to all proceedings in the criminal division of this court in which the judges are acting as committing magistrates". It is not at all clear that the proceedings from which this appeal arose constituted a preliminary hearing in which the judge was acting as a committing magistrate. The initial testimony in the transcript by the Deputy Marshal suggests that the court was merely inquiring about the case in order to *assign* a time and courtroom for further proceedings. This interpretation finds support from the face of the official transcript which denotes the trial court sitting in "Assignment Branch". If the trial court was merely acting as an assignment court then Rule 13 would be inapplicable because it is limited by its terms to a preliminary hearing on felony charges and an arraignment.

Even if we assume *arguendo* for the purpose of avoiding speculation with regard to the record on appeal that the court below was sitting as a committing magistrate, it does not follow that Rule 42(a) of the Federal Rules of Criminal Procedure applies to the proceedings here involved.

Rule 13 reflects D.C.Code 1967, § 11–963(c), which gives the D.C. Court of General Sessions jurisdiction co-extensive with the U.S. District Court for the District of Columbia "to make preliminary examination and commit offenders or grant bail in bailable cases, either for trial or for further examination". Fed.R.Crim.P. 54(a)(2), which also reflects Section 11–963(c), provides that the federal criminal proceedings *before commissioners* "apply to similar proceedings before judges * * * of the District of Columbia". The Advisory Committee on the Federal Rules of Criminal Procedure specifically stated that "the rules applicable to criminal proceedings before commissioners are Rules 3, 4, and 5". See Advisory Committee Note to Rule 54 of the Federal Rules of Criminal Procedure, Note to Subdivision (a)(2), Paragraphs #1 and #3. See also, 8 Moore's Federal Practice, Cipes Criminal Rules at p. 54–15 (1968). We conclude that only Rules 3, 4, 5, and 40 are binding on the Court of General Sessions when it performs its function as a commissioner and sits as a committing magistrate.[4] Since Rule 42(a) did not apply to the proceedings in this case, we need not reach the question of whether the Statement by the trial court complied with such Rule.

3. Rule 42(a) states:
   A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.

4. D.C.Code 1967, § 13–101(a) does not include the criminal division of the Court of General Sessions in its specification that the Court's rules "shall conform as nearly as may be practicable" to federal procedural rules. D.C.Code 1967, § 16–701, which authorizes the General Sessions Court to make rules for conducting business in its criminal division, contains no requirement that the federal criminal rules be followed. See also Larkin v. United States (D.C.Mun.App.), 144 A.2d 100, 102 (1958), rev'd on other grounds, 108 U.S.App.D.C. 239, 281 F.2d 72 (1960).

We think that the concept of elemental fairness which underlies due process requires such a disclosure of the facts in every summary contempt case as permits the adequate review by this court of the contempt citations. See Tauber v. Gordon, 350 F.2d 843 (3rd Cir. 1965). The transcript and the Statement in the instant case show that appellant's misconduct was in the actual presence of the court, in other words, within its hearing and sight. They also set forth the facts with sufficient particularity to enable us to know the language of appellant which the trial court found contemptuous.

■ Appellant next urges that he was punished in a summary fashion without the safeguards normally afforded a defendant in a criminal prosecution. In Kelly v. United States, D.C.Mun.App., 65 A.2d 593 (1949), this court pointed out the rule applicable to contempt-in-open-court cases which the Supreme Court has established. We quoted (at p. 594) that rule from the case of Cooke v. United States, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925) as follows:

> To preserve order in the courtroom for the proper conduct of business, the court must act instantly to suppress disturbance or violence or physical obstruction or disrespect to the court, when occurring in open court. There is no need of evidence or assistance of counsel before punishment, because the court has seen the offense. Such summary vindication of the court's dignity and authority is necessary. It has always been so in the courts of the common law, and the punishment imposed is due process of law. [534, 45 S. Ct. 394]

■ Finally, appellant argues that he was not contemptuous of the court. He says that in the first incident he was merely responding to a question from the court and, in the second incident, only seeking from the court the respect to which he felt himself entitled as an officer of the court. Appellant, in response to a proper question from the court, remarked that he did not come before the court "to listen to a whole lot of stuff from you" and that he was not in the mood "for a whole lot of stuff" from the court. Immediately after he was held in contempt for these remarks, appellant then charged the court with racial bias and prejudice in its dealings with the bar. Such comments could not possibly be justified on the ground that they were made in the course of representing the cause of appellant's clients or constituted an appropriate request to be treated with respect. We conclude that appellant's remarks were insulting and improper and amounted to misbehavior which disrupted the court's proceedings and impaired the administration of justice.[5]

Appellate courts in reviewing contempt orders have made allowance for the words and conduct of an attorney which might otherwise have been held to be contempt of court because they occurred in the heat of a lengthy and difficult trial as part of a strenuous and persistent advocacy of a client's cause,[6] or as a result of a personality clash between judge and lawyer over

---

5. A contempt citation was upheld against a lawyer who in open court charged that the trial court's ruling during trial amounted to discrimination against Negroes. United States v. Sacher, 182 F.2d 416, 427 (2nd Cir. 1950), aff'd, 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717 (1951). A lawyer who said to the trial judge after a ruling in open court that he should cite himself for misconduct and ought to be ashamed of himself was found in contempt. MacInnis v. United States, 191 F.2d 157, 159 (9th Cir. 1951). See also In re Chaifetz, D.C.Mun.App., 68 A.2d 228, 230 (1949); Taylor v. Gladden, 232 Or. 599, 377 P.2d 14 (1962); State v. Caffrey, 70 Wash.2d 120, 422 P.2d 307 (1966).

6. See In re McConnell, 370 U.S. 230, 236, 82 S.Ct. 1288, 8 L.Ed.2d 434 (1962); Parmelee Transportation Company v. Keeshin, 294 F.2d 310, 313 (7th Cir. 1961).

a sustained period of time.[7] However, in in the instant case, appellant was before the court in a preliminary proceeding of short duration in a case with no prior history in that court. We find no extenuating circumstances to justify an outburst such as appellant engaged in which ultimately required his removal from the courtroom.

We are not unsympathetic to the natural desire of any lawyer to have a court recognize his professional status and treat him accordingly. We view with distaste and disfavor any form of open or subtle bullying or browbeating by courts of lawyers or, for that matter, of laymen. We disapprove of judges who make use of the pesudo-Socratic methods more suitable to a law school seminar than a court for the purpose of embarrassing members of the bar in the presence of their clients and their colleagues. Mr. Justice Frankfurter has pointed out that the courts can create and maintain the "restraints of respect" which they must have from lawyers in order to operate effectively only by an exercise of "moral authority" and "indispensable standards of dignity and austerity" throughout all proceedings. Offutt v. United States at 17, 75 S.Ct. at 15, supra note 1. See also Sacher v. United States, 343 U.S. 1, 38, 72 S.Ct. 451, 96 L.Ed. 717 (1952) (dissenting opinion of Frankfurter, J.).

On the other hand, lawyers, too, bear a heavy responsibility for maintaining the dignity of the court as its officers and the solemn majesty of the law as its practitioners. ABA Canons of Professional Ethics, Canon 1; see United States v. Landes, 97 F.2d 378, 381 (2nd Cir.1938). It is so obvious as to be scarcely worth mentioning that procedures were readily available to

appellant if he believed that the trial court was biased to the point that his clients could not receive a fair hearing. It is essential not only that justice be done in our courts but that there be an atmosphere of judicial calm and purposeful dignity in our courts, particularly those such as this trial court which have the most intimate contact with the largest number of citizens.[8] Such incidents as that involved in this appeal do a disservice not only to our profession but also to our community.

We conclude that the record supports the judgment of contempt imposed below and that the procedure followed by the trial court met the requirements of due process and was valid.

Affirmed.

---

7. See Offutt v. United States, 348 U.S. 11, 75 S.Ct. 11, 99 L.Ed. 11 (1954), and upon later appeal at 98 U.S.App.D.C. 69, 71, 232 F.2d 69, 71 (1956), cert. denied 351 U.S. 988, 76 S.Ct. 1049, 100 L.Ed. 786.

8. Report of the President's Commission on Crime in the District of Columbia (1966):

It is in this court [District of Columbia Court of General Sessions] that the judicial process has its greatest personal impact on the residents of the District. It is here that maintaining the quality of justice is most imperative, despite increasing numbers of cases, the speed with which they must be processed and the severely limited resources of the Court. (page 270).