**In the Matter of James N. ELLIS.**

**No. 5103.**

District of Columbia Court of Appeals.

Argued Feb. 10, 1970.

Decided April 20, 1970.

---

Quin Denvir, Washington, D. C., for appellant. J. Dean Heller and Woodley B. Osborne, Washington, D. C., were on the brief for appellant.

Leo N. Gorman, Asst. Corp. Counsel, with whom Charles T. Duncan, Corp. Counsel, Hubert B. Pair, Principal Asst. Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, were on the brief, for appellee.

Before HOOD, Chief Judge, and GAL-LAGHER and NEBEKER, Associate Judges.

NEBEKER, Associate Judge:

This is an appeal from a judgment holding Ellis in contempt of court "for shouting and banging [his] fist on [the] bench" during the trial of a civil action in which Ellis appeared as defendant.[1] The litigation arose over a dispute about Ellis' right to possession of certain papers alleged to belong to the plaintiff. When the case was called for trial, Ellis appeared without counsel. After being advised of the desirability of having an attorney, Ellis decided to proceed pro se.[2]

In reviewing appellant's conduct, the contemptuous acts must be interpreted in light of the surrounding circumstances at that time.[3] If it reflects that appellant *"overstep[ped]* the bounds of propriety and *refuse[d]* to heed the admonitions of the court or to obey in the presence of the court a lawful order of the court, he commit[ted] an act of contempt." Jones v. United States, 80 U.S.App.D.C. 109, 110, 151 F.2d 289, 290 (1945). (Emphasis supplied.)

The record reflects a two-stage trial. At the first hearing, appellant was questioned concerning possession and the location of correspondence relating to plaintiff's grievance before the postal authorities. Appellant had consulted with plaintiff about the grievance and plaintiff asserted he had given appellant the disputed documents. Appellant's replies were not responsive and patently evasive to the repeated attempts of the court and plaintiff's counsel to establish whether he had the papers. A typical

1. D.C.Code 1967, § 11–982(a) provides:
"The District of Columbia Court of General Sessions * * * may punish * * * for contempt committed in the presence of the court, by a fine not exceeding $50 or imprisonment not exceeding 30 days."

2. Ellis attempted to proceed pro se with the understanding that he could change

his mind if "complications" arose. The trial judge promptly informed Ellis that such would not be possible—that is, "You can't decide if things go badly for you * * * to start all over again."

3. Fisher v. Pace, 336 U.S. 155, 161, 69 S.Ct. 425, 93 L.Ed. 569 (1949) ; Ex parte Hallinan, 126 Cal.App. 121, 14 P.2d 797, 799 (1932).

example of the court's comments which demonstrate the context in which contempt was adjudicated is helpful: "I will tell you, Mr. Ellis, don't fence with me. When I ask you where the papers are on Mr. Hall, I obviously mean the ones in your possession. * * *" Later on the trial judge found it necessary to instruct Ellis: "Don't bang your fist on the table. I am going to hold you in contempt for that. Sit down." It is apparent from reading the record that repeated attempts to establish the location of the papers were met with evasive answers or comments calculated to avoid requested direct answers. The court then ordered service of a subpoena duces tecum on appellant and continued the trial for 18 days.

Upon commencement of the second hearing, counsel for plaintiff asked appellant:

"Q * * * Do you have those documents with you?

"A The summons asked me to appear in court at 3:30 today and to bring some documents with me, and not to depart from the court until dismissed.

"Q Now, will you answer my question?

"A Do I have to answer his question, Your Honor?

"THE COURT: I direct you to answer the question.

"THE WITNESS: Yes, I complied with the instructions given me by the summons.

"BY MR. KENDRICK: [counsel for plaintiff]

"Q Will you produce those papers, please?

"A No, sir. I have to submit the papers to the defendant in this case, and I feel that the defendant will present the papers to the attorney—to the court.

"Q I'm not certain whether you have the parties confused or not. Do you recognize that you're the defendant?

"A Right now I'm a witness for the plaintiff. I'm not here as a defendant. If I was—

"BY MR. KENDRICK: I must appeal to the Court to instruct the witness as to what capacity he's acting—

"THE COURT: I don't care what capacity he's acting in. Do you have the papers? Give them to Mr. Kendrick.

[A pause.]

"Did you understand my direction? I instructed you to turn the papers over to Mr. Kendrick—now.

"THE WITNESS: Your Honor, I feel this is somewhat wholly out of order. I don't feel that anyone in this court has evidence to the court that they have any ownership to papers in my possession. I feel that before—

"THE COURT: Very well. Step down; step down.

"Tell my clerk to come in.

[A pause.]

"I'd like to have an attorney to come over from the criminal side to represent this defendant in a contempt proceeding. Maybe you better go down there and get somebody who's competent.

"THE DEPUTY CLERK: Yes, sir.

"THE COURT: I would like to have an attorney advise him of the consequences if he does not comply with the Court's order, and to represent him in a contempt proceeding if it becomes necessary."

An attorney was then called from the criminal branch of the court and appellant was advised of the consequences of his failure to obey a direction of the court. The following colloquy ensued:

"THE COURT: * * * Mr. Ellis, I direct you now to turn over the papers that you brought here pursuant to the subpoena signed by the Court. I direct you to turn those documents over to Mr. Ken-

drick, counsel for the plaintiff, so that he may use them in these proceedings.

"Do you understand my direction?

"THE WITNESS: No, Your Honor.

"THE COURT: All right. Just have a seat—

"THE WITNESS: I did not understand a direction of this nature; and the reason I do not understand it is because you called an attorney in here—you have given him some misinformation yourself, Your Honor.

"Give me an opportunity to explain to the Court and to this gentleman that you brought in here to give me advice and representation. I think he is being misled, just as I am being misled.

"THE COURT: Let the record show that in this last statement Mr. Ellis was raising his voice, shouting at the Court, and banging his fist on the bench—

"THE WITNESS: Your Honor, for goodness sakes, I have not raised my voice beyond any reasonable degree here.

"THE COURT: Let the record further show that Mr. Ellis again rose from his seat, shouted at the Court, and did not respond to the directions of the Court."

The attorney appointed by the court then asked and was permitted to address the court. He spoke of the merits of the suit and advised the court that he had apprised Ellis of his duty to obey the court's order to deliver the documents to plaintiff's counsel and of the possible penalty and appellate remedies. The following then transpired:

"THE COURT: Mr. Ellis, I hereby direct you—

"THE WITNESS: Your Honor,—

"THE COURT: I hereby direct you—perhaps you want to say something.

"THE WITNESS: Yes, sir.

"THE COURT: Go ahead.

"THE WITNESS: Yes, Your Honor; thank you.

"THE COURT: You just sit down.

"THE WITNESS: Thank you for giving me the opportunity to—

"THE COURT: Just sit down and make the statement.

"THE WITNESS: Yes, sir. Before you direct me, Your Honor, to give up any papers to anyone here at this time, I'd like to make it clear that I nor the attorney here know what papers it is the Court has asked for. No one has specified any papers, and I have simply stated as a defendant here—or, as a witness for the plaintiff—I have stated that the papers in my possession would be presented to the Court by the defendant, which I as a witness for the plaintiff would submit these papers to the Court as a defendant. They would get to the Court.

"However, the attorney—the judge here has asked me to give the papers to Mr. Kendrick, the attorney for the plaintiff, and I feel that the Court here has not established any ownership in any papers in my possession for me to give over to Mr. Kendrick; and I would like at that particular point, I would like to have my—the attorney that the Court has appointed here, to advise me on that, whether or not I must give up papers in my possession, or whether I should wait for a specificity from the judge here in stating for me to give papers.

"Now, no one has indicated to me any ownership here, and I would like the attorney that the judge has appointed to advise me, do I have to give up those papers.

"THE COURT: I would be very glad to give you a few minutes to consult with your attorney in regard to that matter. I will take three minutes for you to discuss the matter with your attorney. If you need more time, I will give you more time.

"THE WITNESS: Yes sir. Your Honor, I would like—

"THE COURT: I don't want any—

"THE WITNESS: —to get my own attorney. I rather you not appoint an attorney to me at this particular time. It seems that the matter is becoming rather a difficult one, and I think an attorney of my own should be brought here and I should be given advice by someone of my selection. I don't feel that you should impose upon me—

"THE COURT: I think that is an excellant idea, and I do want to fully protect your rights. Therefore, I will continue this * * *."

After selecting a convenient date for plaintiff's counsel, the following occurred:

"THE COURT: All right. I will continue this matter to Friday at 11 o'clock, so Mr. Ellis can consult with his own attorney in regard to whether he has or has not a duty to turn over the records in response to the Court's orders.

"There will be no question about this defendant having due process of law and the full protection of his rights. The matter is continued until Friday at 11 o'clock. In the meantime, I hereby direct you, Mr. Ellis, to return on Friday at 11 o'clock to this court, Courtroom 7 in this building, with the records that you have been required to produce pursuant to the subpoena signed by the Court, and these same records are to be here on Friday at 11 o'clock the same as they were here today.

"THE WITNESS: Yes, Your Honor.

"THE COURT: All right. Step down.

"THE WITNESS: There's just one thing. The subpoena that was issued to me—

"THE COURT: Step down, sir.

"THE WITNESS: I don't know what it is you want—

"THE COURT: Step down. Mr. Mc-Nelis, is there anything you want to say before I proceed with contempt of this defendant for shouting at the Court and banging his fist at the bench?

"MR. McNELIS: There's nothing I can say, Your Honor.

"THE COURT: Mr. Ellis, is there anything you want to say before I find you in contempt for shouting at the Court and banging your fist on the bench?

"MR. ELLIS: Yes, sir. Your Honor.

"THE COURT: All right."

Appellant then made a statement in which he apologized, denied contemptuous intent, and gave a diminished account of his prior actions. The court adjudged appellant in contempt, and permitted counsel and appellant to speak on the question of punishment. A five-day sentence was imposed, but stayed to permit preparation for the next appearance in the case. Subsequently, an appeal bond was set and posted.

■ Taking the entire record into consideration, and in view of the fact that it was made to show the nature of appellant's conduct at the time it transpired, we affirm the contempt order. We are mindful that the conduct for which Ellis was adjudged in contempt related to raising his voice and striking a courtroom fixture with his fist. We have, however, in quoting at length from the transcript, endeavored to set forth the entire context of the matter in order to demonstrate appellant's attitude toward the court and the objectivity and tolerance of the trial judge. As the Supreme Court has aptly stated:

"* * * In a case of this type the transcript of the record cannot convey to us the complete picture of the court-

room scene. It does not depict such elements of misbehavior as expression, manner of speaking, bearing, and attitude of the [appellant]. Reliance must be placed upon the fairness and objectivity of the presiding judge. * * *" Fisher v. Pace, 336 U.S. 155, 161, 69 S.Ct. 425, 428, 93 L.Ed. 569 (1949).

Ellis was warned of the consequences of his conduct. He was indulged to the limit in presenting his side of the controversy. While the trial court no doubt felt it necessary to so indulge Ellis since he had elected to proceed without counsel, we observe that simply because one is proceeding *pro se* he is not to be excused from conduct which he has been made to understand or should reasonably know is within the ambit of contempt.

Appellant's contention that he was denied counsel of his own choosing during the contempt portion of the hearing is not well taken. When contempt is committed in the presence of the court there is no right to the assistance of counsel before punishment is imposed. In re Gates, D.C.App., 248 A.2d 671, 676 (1968). See also Re Oliver, 333 U.S. 257, 274–275, 68 S.Ct. 499, 92 L.Ed. 682 (1948); Cooke v. United States, 267 U.S. 517, 534, 45 S.Ct. 390, 69 L.Ed. 767 (1925); Ex parte Terry, 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405 (1888). Moreover, here both appointed counsel and appellant were afforded an opportunity to speak.

Appellant's assertion that the sentence was unduly harsh is not subject to review in this court.[4] It was within permissible limits prescribed by the statute. (*See* note 1, *supra*.)

Accordingly, the judgment appealed from is

Affirmed.

4. Dawson v. District of Columbia, D.C. App., 217 A.2d 664, 665 (1966); Gillard v. United States, D.C.App., 202 A.2d 776, 777 (1964); Stovall v. United States, D.C.App., 202 A.2d 390, 391 (1964).