## Mueller v. Bracey

*Allen L. Feingold,* for plaintiff.
*Jonathan Wheeler,* for defendant.
*Peter T. Parashes,* for additional defendant.

MARUTANI, *J.*, February 16, 1984—Plaintiff's counsel, Allen L. Feingold, Esq., has appealed the trial judge's imposition of six fines totalling $900 for contempt during the course of a 12-day trial which resulted in a record exceeding 2,600 pages. The amount in controversy was less than $22,000 and involved a claim for insurance loss.

The imposition of the first contempt fine of $100 occurred on the third day of trial for counsel's continuing, disruptive behavior, notwithstanding repeated rulings and admonitions from the court.[1]

---

1. N.T. 3.52-3.53. The following are some references to the record wherein rulings and admonitions were entered, all of which preceded the imposition of the first contempt fine: N.T. 2.71—counsel cautioned not "to testify;" 2.73—making "factual allegations;" 2.92—characterizing purported assertions after court had ruled on objection; 2.112 and 2.115—continuing to interrupt after the court had ruled, admonished "not to make speeches" in the guise of making objections; 2.119—continuing to testify; 2.126—an express warning to counsel, out of the hearing of the jury, pertaining to his disruptive conduct; 2.132—persisting in seeking to characterize his questioning rather than simply asking questions; 2.143—attempting to make factual statements after court had ruled on an objection; 2.144—making factual statements; 2.145—attempting to characterize his client's evidence; 2.147—factual characterizing of a document in question; 2.154—asking patently leading questions, in the nature of counsel testifying, and then following up with a leading question notwithstanding the court warning counsel; 2.156—presenting argument in the guise of a question; 2.158—leading question; 2.163—leading and improper question; 2.167—making a factual statement after an objection had been sustained; 2.174—following a line of question even after the court has ruled such to be irrelevant; 2.179—testifying and characterizing in questioning; 2.182—counsel admonished not to make factual statements in presence of jury, "I've said that a number of times;" 2.197—mischaracterizing the balanced nature of the proceedings (Feingold: "Could I respond finally for the first time, Your Honor?");

Unfortunately, however, counsel persisted in ignoring the court's numerous admonitions—administered

4.223—(Feingold, in front of jury: "I'll take anything I can get around here."); 2.201 and 203—cautioned against "speaking to the jury" through facial expressions, including times when "the other side . . . has the floor;" 2.208—leading question incorporating counsel's characterization of defendant's conduct as constituting "threats;" 2.212—admonished again as to conduct in questioning; 2.257—testifying in the midst of objecting; 2.258—testifying and making argument in objecting; 2.261—making argument in objecting; 2.261—characterizing testimony; 2.268—interrupting cross-examination; 2.270—disruptive objection and mischaracterizing proceedings, ignoring court's ruling; 2.279—characterizing opposing counsel's questioning; 2.280—purporting to keep score on number of questions and answers; 3.4—three objections consecutively, even in the midst of the court's discussion; 3.6—three successive objections, including a purported characterization of the questioning; 3.8—contentious challenge to the court's ruling; 3.10—characterizing opposing counsel's line of questioning as "fraud on the court" even after the court had overruled counsel's objection; 3.11—characterizing opposing counsel's conduct even before counsel has propounded a question; 3.12 and 3.17—repeatedly interrupting and disrupting opposing counsel's efforts to propound questions; 3.13—characterizing as "true" his own witness' deposition in the midst of opposing counsel's cross-examination; 3.16—using an objection as a vehicle to testify, requiring the court to admonish counsel in the presence of the jury; 3.20—utilizing an objection to inject counsel's own characterization of deposition; it further developed that counsel, after initially representing, incorrectly and after much questioning, 3.23-3.25, that he had subpoenaed but not been given the depositions, in fact had access to the depositions in question as appears at 3.27; 3.28—interrupting opposing counsel in the midst of such counsel seeking to propound a question, and then exhibiting a prescience of a non-event as to what opposing counsel was supposedly seeking to do; 3.29 and 3.47—testifying while objecting; 3.31—prematurely interjecting self with objections so that his own witness' testimony is cut off during cross-examination; 3.34—testifying in objection followed by the court having to admonish counsel not "to recite

both at sidebar and in the presence of the jury—and continued to: characterize the testimony while purporting to interpose objections;[2] constantly interpose disruptive interruptions during opposing counsel's cross-examination;[3] engage in highly improper conduct in the presence of the jury, including nonverbal communication such as gesticulating,[4] facial grimaces,[5] winking at one of the jurors while entering the anteroom for one of numerous sidebar conferences which the court was compelled to call to admonish counsel,[6] and, placing his head down on the counsel table during opposing counsel's questioning.[7] Counsel's disdain for the court's instructions did not stop there: during a break in the midst of his client's cross-examination, notwithstanding express instructions to counsel's client not to discuss the case with anyone, Attorney Feingold nonetheless picked up an exhibit and made inquiries of his client.[8] It appearing that counsel viewed the entire proceedings as being mirthful,[9] for counsel's in-

the evidence;" 3.38—attempting to interject a characterization after court had ruled on counsel's objection; 3.42—admonished against unseemly conduct of leaning head against wall during conference with court; 3.44—repeating objection after court's ruling and declination; 3.45—frivolous (and disruptive) objection, repeated at 3.46; 3.47—reciting testimony during opposing counsel's cross-examination; 3.52—interrupting and disrupting cross-examination.

2. For example, N.T.2.208; 3.60; 3.65; 3.68; 3.70; 3.71; 3.72; 3.74; 3.99; 3.101; 3.103; 3.175; 3.178.

3. In addition to those referred to in footnote 2, above, N.T. 3.63; 3.64; 3.67.

4. N.T. 3.77.

5. N.T. 3.112; 7.131; 8.77.

6. N.T. 3.112.

7. N.T. 3.113.

8. N.T. 3.116 et seq.

9. N.T. 3.123.

fraction of the court's instructions, and in an effort (unsuccessful, as will shortly be seen) to impress upon counsel the seriousness of the entire proceedings, a second contempt fine, this time in the increased sum of $200, was imposed.[10]

Notwithstanding many admonitions from the court, counsel persisted in framing questions (to his own client) which were not only leading but also included factual assertions (testimony) by counsel.[11] However, without burdening this opinion further with a continued litany of counsel's infractions, we turn directly to the remaining four impositions of contempt fines against counsel.

Commencing at N.T. 7.47 the record begins with counsel blatantly testifying, followed by the court informing counsel that such was "improper;" whereupon counsel persisted in what can only be characterized as "contentious fencing" with the court.[12] This resulted in the imposition of a third

---

10. N.T. 3.125. In taking the present appeal, apparently counsel had a change of mind as to honoring the imposition of the fine: see N.T. 3.126.

11. In many instances, the questions would call for speculative responses, as well as being leading: N.T. 3.184; 3.193; 3.201 (counsel admonished); 3.204-205; 3.211; 3.217.

12. The exchange appears as follows (N.T. 7.47):

Mr. Feingold: Your Honor, I would ask that this testimony be stricken because no out drives were stolen in the incident in question.

The court: Now, Mr. Feingold, that is improper. Were you there?

Mr. Feingold: That's been testified—

The court: Were you there, sir?

Mr. Feingold: I'm talking about the incident—

The court: Were you there, sir?

Mr. Feingold: Was I where when, Your Honor?

The court: You made a testimonial statement. I want to know were you there?

contempt fine of $200 for counsel's continued violation of the court's directive "not to testify," as exacerbated by counsel's unseemly evasion, in the presence of the jury, when questioned by the court.[13]

The fourth contempt fine of $100, was imposed on the eighth day of trial, for Attorney Feingold's repeated questioning into irrelevant areas, in spite of the court's repeated directives to discontinue, thereby revealing counsel's blatant disregard for the court's authority in front of the jury.[14]

The fifth contempt fine (ninth day of trial) was imposed when counsel continued to inject his own testimony into the questioning.[15] After an admonition by the court, counsel repeated a question to which an objection had been sustained, and notwithstanding that ruling posed the same question, interspersed with efforts by opposing counsel to object.[16] At the ensuing sidebar conference, counsel was again reminded of his actions, and a $100 contempt fine was imposed.[17]

The sixth and final contempt fine was imposed when counsel, in the presence of the jury, characterized the testimony of his witness as being helpful to counsel's client's case, remarking "Thank you for helping us with the case,"[18] as well as sotto voce re-

---

Mr. Feingold: Where, sir?

The court: On June 23rd of 1976 were you there?

Mr. Feingold: I was there within that week, sir; and I was there when the list was prepared.

The court: Let me see you at side-bar.

13. N.T. 7.48.

14. N.T. 8.31.

15. N.T. 9.71.

16. N.T. 9.73.

17. N.T. 9.75.

18. See N.T. 11.18 et seq. Preceding this witness' testimony counsel directed to the court a totally unfounded, as well as

marks to the witness (not heard by the court), also made in the presence of the jury.[19] The court proceeded to impose a contempt fine of $200.[20]

Attorney Feingold's trial conduct served to interfere with the orderly conduct of the trial.[21] His repeated violations of the trial court's admonitions and instructions served to extend a simple insurance claim into a 12-day trial, thereby delaying the orderly administration of justice. There was awareness or intent on counsel's part,[22] as well as "wilful disregard of the court's order[s]" or a "reckless disregard for his professional duty."[23] As stated by the Pennsylvania Supreme Court:

"Generally speaking, one is guilty of contempt when his conduct tends to bring the authority and administration of the law into disrespect. The right to punish for such contempt is inherent in all courts. When it is committed in its presence the court may, in punishing the offender, act of its own knowledge without further process, proof, or examination. Such power, "although arbitrary in its nature and liable to abuse, is absolutely essential to the

---

improper, remark: "Your Honor has taken over the examination, Your Honor may finish it." (N.T. 11.4).

19. N.T. 11.20.

20. N.T. 11.21.

21. See Knaus v. Knaus, 387 Pa. 370, 375, 127 A.2d 669 (1956).

22. Commonwealth v. Washington, 466 Pa. 506, 353 A.2d 806 (1976).

23. In re Farquhar, 492 F.2d 561, 564 (D.C. Cir. 1973). Also see: Code of Professional Responsibility, EC 7-36:

"Although a lawyer has the duty to represent his client zealously, he should not engage in any conduct that offends the dignity and decorum of proceedings. While maintaining his independence, a lawyer should be respectful, courteous, and above-board in his relation with a judge . . . before whom he appears."

protection of the courts in the discharge of their functions": Ex Parte Terry, 128 U.S. 289, 313. It is a power "essential to preserve their authority and to prevent the administration of justice from falling into disrepute": Fisher v. Pace, 336 U.S. 155, 159. Levine Contempt Case, 372 Pa. 612, 618, 95 A.2d 222 (1953).

Attorney Feingold's conduct was not characterized by isolated instances of infraction; rather, his infractions permeated the entire trial. If, in the instant situation, the trial court's exercise of its inherent power of contempt was not one "essential to preserve . . . authority and to prevent the administration of justice from falling into disrepute," Levine Contempt Case, supra, then we may as well abdicate control and responsibility to any unbridled conduct that counsel may elect to arrogate to themselves. This, of course, would be impermissible.